IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSE AGEO LUNA VANEGAS,
on behalf of himself and all others similarly situated,

                Plaintiff,                        OPINION and ORDER

   v.

                                             21-cv-54-jdp

SIGNET BUILDERS, INC.,

                Defendant.

---

Plaintiff Jose Ageo Luna Vanegas worked for defendant Signet Builders, Inc. under a guestworker visa to build "livestock confinement structures" on farms in several states. Dkt. 1, ¶ 28. Although he frequently worked more than 40 hours per week, Signet did not pay him overtime. Luna Vanegas contends that Signet violated his rights under the Fair Labor Standards Act (FLSA). He moves for conditional certification of a collective of all Signet workers who worked under a guestworker visa. Dkt. 15. Signet moves to dismiss Luna Vanegas's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Dkt. 25.

The court agrees with Signet that Luna Vanegas was not entitled to overtime because his work, as described in his complaint, fell within the FLSA's agricultural-work exemption. So the court does not need to consider the parties' arguments regarding conditional certification or personal jurisdiction over claims of members of the proposed collective. The court will grant Signet's motion to dismiss, deny as moot Luna Vanegas's motion for conditional certification, and close this case.

ANALYSIS

On Signet's motion to dismiss, the court takes all well-pleaded allegations in Luna Vanegas's complaint as true and draws all reasonable inferences in Luna Vanegas's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Signet bases its motion on the affirmative defense that Luna Vanegas's work fell within a provision of the FLSA that exempts agricultural workers from its overtime requirements. Dismissal for failure to state a claim is ordinarily not appropriate based on an affirmative defense. *Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962, 982 (N.D. Ill. 2019). But "a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) (dismissal under Rule 12(b)(6) appropriate when allegations in complaint "so thoroughly anticipated the [affirmative] defense that [the court] could reach the issue" on the complaint alone). So the court may consider whether Luna Vanegas's description of his work in his complaint falls within the FLSA's agricultural exemption and therefore bars his claim.

According to the complaint, Dkt. 1, Luna Vanegas is a Mexican citizen. Between 2004 and 2019, he worked for Signet under an H-2A guestworker visa, which allows citizens of other countries to perform agricultural work in the United States on a temporary basis. Signet is a construction company that contracted to build "livestock confinement structures" on farms in Wisconsin, Iowa, Indiana, and other states. Dkt. 1, ¶ 16. On its visa application forms, Signet described the job duties of Luna Vanegas and the other guestworkers as follows:

> On farms, unload materials, lay out lumber, tin sheets, trusses, and other components for building livestock confinement structures. Lift tin sheets to roof and sheet walls, install doors, and caulk structure. Clean up job sites. Occasional use of forklift upon employer provided certification.

*Id.* The Department of Labor approved the visa application forms for Luna Vanegas and the other guestworkers. Luna Vanegas says that Signet's description of his work on the visa application forms is accurate. *Id.*, ¶ 28. He says that although he and the other guestworkers routinely worked more than 40 hours per week, Signet did not pay them overtime when they did so.

The FLSA requires employers to pay workers at a rate of at least one and one-half times their regular rate of pay for each hour they work beyond 40 in a workweek. 29 U.S.C. § 207(a)(1). But the FLSA exempts "any employee employed in agriculture" from this requirement. 29 U.S.C. § 213(b)(12). The FLSA defines "agriculture" in this way:

> "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities[,] . . . the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f). In other words, the agricultural exemption applies to two categories of workers: (1) workers directly engaged in "farming in all its branches"; and (2) workers engaged in "any practices . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations." The first category of work is often called "primary agriculture," and the second "secondary agriculture." *See, e.g., Holly Farms Corp. v. N.L.R.B.*, 517 U.S. 392, 400 (1996).

The parties agree that the work Luna Vanegas performed was not primary agriculture under § 203(f); the question is whether it was secondary agriculture. A regulation implementing the secondary agriculture exception states that employees of independent contractors who build structures such as silos and granaries on a farm are engaged in secondary agriculture so

3

long as the work is "performed as an incident to or in conjunction with the farming operations on the particular farm." 29 C.F.R. § 780.136. The regulation makes it clear that whether Luna Vanegas performed secondary agriculture by building livestock confinement structures turns on the same considerations as it would for any other worker—was his work performed on a farm, and was it incidental to or in conjunction with the farm's farming operations? The parties agree that he worked "on a farm," so to determine whether he performed secondary agriculture, the court must determine whether his work was incidental to or in conjunction with farming operations.

Luna Vanegas's complaint shows that it was. Although Luna Vanegas "had no contact" with livestock in his work, Dkt. 1, ¶ 19, his work building livestock confinement structures was in conjunction with "the raising of livestock," one of the core farming operations specified in § 203(f). *Maneja v. Waialua Agricultural Co.*, 349 U.S. 254 (1955), illustrates why. *Maneja* involved workers at a large plantation where sugarcane was grown, then processed into raw sugar and molasses on the farm. *Id.* at 256. The Court considered whether several categories of plantation workers fell into the secondary agriculture exemption. The Court concluded that workers on a plantation-owned railroad who transported workers, farm equipment, and sugarcane around the plantation performed secondary agriculture because the railroad was used exclusively for agricultural functions; without the railroad, "the land could not be cultivated and the cane, after harvest, would spoil in the fields and be lost." *Id.* at 725.

But the *Maneja* Court concluded that workers at the plantation's sugarcane-processing plant did not perform secondary agriculture because processing the sugarcane was not incidental to or in conjunction with farming the sugarcane. The primary reason the Court gave for its conclusion was that available data regarding sugarcane farmers showed that most did

4

not process their own sugarcane, particularly smaller farmers, which supported the conclusion that processing the sugarcane was a separate endeavor from farming it. *Id.* at 266–67.

The Court also considered a third group of employees: the plantation's repair workers, who included "mechanics, electricians, welders, carpenters, plumbers and painters." *Id.* at 257. The Court held that repair workers who serviced "equipment used in performing agricultural functions: tractors, cane loaders, cane cars, and so forth" performed secondary agriculture, but those who serviced the plantation's sugarcane-processing equipment did not. *Id.* at 263.

Luna Vanegas's work is comparable to the work of *Maneja*'s railroad employees and exempted repair workers, not that of the processing-plant employees and the nonexempt repair workers. Like the exempted workers in *Maneja*, Luna Vanegas worked with materials used directly for an agricultural purpose: confining livestock. His allegations do not support the conclusion that he was involved in what § 780.136 calls "a separately organized productive activity," like the workers in *Maneja* who processed the sugarcane for shipment.

Luna Vanegas contends that *Maneja* is distinguishable because the workers in that case worked directly for the plantation, not for an independent contractor. He says that two further elements are required for an independent contractor's employees to perform secondary agriculture: (1) the contractor's business must "be exclusively dedicated to agricultural practices"; and (2) the contractor's activities must "be carried on as part of the agricultural function of the farm on which [they are] performed." Dkt. 39, at 7. He argues that his work for Signet met neither of these requirements because (1) Signet is a general construction company rather than a specialized agricultural construction company; and (2) farmers do not typically build large livestock confinement structures themselves.

These elements are found nowhere in § 203(f). Luna Vanegas's argument is based on a misunderstanding of the distinction drawn in § 780.136 between workers engaged in activity

5

that is "incident[al] to or in conjunction with . . . farming operations," and workers engaged in "a separately organized productive activity." Luna Vanegas contends that the question is whether the worker's *employer* is engaged in a separately organized productive activity from farming. But as *Maneja* shows, what matters is whether the *worker's* activities are directed toward an agricultural or nonagricultural end. This conclusion is supported by § 780.136, which speaks in terms of the "practices performed" by the employee; it says nothing about the employer's overall business. And this conclusion is consistent with the reasoning of *Maneja*, which considered whether processing sugarcane was incidental to farming it, not whether the processing workers' employer engaged in any nonagricultural business.

Luna Vanegas relies on *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755 (1949), but the case does not support his position. His first proposed requirement, that the business "be exclusively dedicated to agricultural practices," is drawn from the Court's discussion of the legislative history of the secondary agriculture exemption. The Court noted that the initially proposed version of the exemption applied only to work performed "by a farmer"; it did not include work performed "on a farm." *Id.* at 767. During debate, a senator "objected that this would exclude the threshing of wheat or other functions necessary to the farmer if those functions were not performed by the farmer and his hands, but by separate companies organized for and devoted solely to that particular job." *Id.* The exemption was amended to include work performed "on a farm" to address the senator's concern. *Id.*

Luna Vanegas assumes that the exemption for secondary agriculture performed "on a farm" must be precisely limited to the senator's hypothetical. But he doesn't cite any authority to support that conclusion, and it's not supported by the case, either. As the Court noted, the "on a farm" amendment would apply to the hypothetical wheat threshing companies "because their work was incidental to farming and was done on the farm"—which simply restates

6

§ 203(f)'s test for secondary agriculture without any additional requirements. *Id.* The Court said nothing to suggest that the "on a farm" amendment was limited to precisely the type of "separate companies" described in the senator's hypothetical, as Luna Vanegas contends, and neither the statutory language nor the legislative debate supports Luna Vanegas's position.

Luna Vanegas's second proposed requirement, that the contractor's activities must "be carried on as part of the agricultural function of the farm on which [they are] performed," fares no better. He draws this language from a passage of *Farmers Reservoir* in which the Court described how work that was previously agricultural in nature could become nonagricultural work over time. *Id.* at 761. The Court noted that several types of work had once been performed by farmers but were now "separately organized as . . . independent productive activit[ies]" performed off of farms, including tool manufacturing, fertilizer production, power generation, and wheat grinding. *Id.* But the Court then explicitly said that this development was captured by the FLSA's "carefully considered definition" of secondary agriculture, which simply asks whether the work is "performed by a farmer or on a farm as an incident to or in conjunction with . . . farming operations." *Id.* at 762. Again, Luna Vanegas hasn't shown that § 203(f) requires anything more than what it says.

The Court of Appeals for the Eleventh Circuit considered and rejected a similar argument in *Sariol v. Florida Crystals Corp.*, 490 F.3d 1277 (11th Cir. 2007). In that case, the plaintiff worked on a farm, delivering fuel for various machinery around the farm and repairing equipment around the farm. *Id.* at 1278. He argued that at least some of his work was not secondary agriculture because some of the machinery for which he delivered fuel was owned by independent contractors. *Id.* at 1280. Like Luna Vanegas, he seized on language from *Farmers Reservoir* to contend that those independent contractors were "separately organized as an independent productive activity." *Id.* (quoting *Farmers Reservoir*, 337 U.S. at 761). The court

7

rejected the argument, noting that the language from *Farmers Reservoir* "deals only with the problem of distinguishing agricultural from nonagricultural *activities*." *Id.* (emphasis added). The court said that "*Farmers Reservoir* simply does not speak to the issue of whether the work of independent contractors can be considered separate farming operations." *Id.*

Luna Vanegas's position does find support in *N.L.R.B. v. Monterey County Building & Construction Trades Council*, 335 F.2d 927 (9th Cir. 1964). In that case, the court held that construction workers employed by an independent contractor to construct buildings on poultry farms were not engaged in agriculture because the construction companies "are organized separately from any farming or poultry operations and are engaged in a productive activity which is independent from any farming or poultry operations." *Id.* at 931. Luna Vanegas also cites a decision by a Department of Labor administrative law judge who reached a similar conclusion in a brief opinion. *In re: MRL Fencing & Construction*, No. 2012-TLN-00042 (Aug. 8, 2012).[1] But these cases are inconsistent with the reasoning of *Maneja* and with the regulations applying the secondary agriculture exemption, and they are against the weight of authority on the issue.[2] Indeed, only one other court has cited *Monterey County* with approval for this holding, doing so in a footnote without extended discussion. *N.L.R.B. v. Scott Paper*

---

[1] The decision is available at https://www.dol.gov/agencies/oalj/public/ina/references/caselists/tln_decisions.

[2] *See, e.g., Bayside Enters., Inc. v. N.L.R.B.*, 429 U.S. 298, 303 n.13 (1977) (citing with approval Department of Labor interpretative bulletin stating that independent contractor's employees who worked on a farm incidental to or in conjunction with poultry raising were employed in secondary agriculture, even though independent contractor was not exclusively an agricultural business); *Sariol*, 490 F.3d at 1280–81; *Holtville Alfalfa Mills v. Wyatt*, 230 F.2d 398 (9th Cir. 1955) (employees of industrial alfalfa processing operation who worked on a farm were employed in secondary agriculture, even though alfalfa processing operation was industrial work, not agriculture).

*Co.*, 440 F.2d 625, 626 n.3 (1st Cir. 1971). The court is not persuaded that the cases cited by Luna Vanegas require anything more of independent contractors than § 203(f) explicitly states.

In sum, Luna Vanegas performed his work on farms, and the work he performed—constructing livestock containment structures—was incidental to farming, not related to a separately organized activity from farming operations. So his work fell within the FLSA's exemption for secondary agriculture. The court will grant Signet's motion and dismiss this case.

## ORDER

IT IS ORDERED that:

1. Defendant Signet Builders, Inc.'s motion to dismiss, Dkt. 25, is GRANTED. This case is DISMISSED under Federal Rule of Civil Procedure 12(b)(6).

2. Plaintiff Jose Ageo Luna Vanegas's motion for conditional certification, Dkt. 15, is DENIED as moot.

3. The clerk of court is directed to enter judgment in favor of Signet and close this case.

Entered August 12, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge