UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOSE AGEO LUNA VANEGAS,
on behalf of himself and all
others similarly situated,

Plaintiff,

v.

Case No. 21-cv-54

SIGNET BUILDERS, INC.,

Defendant.

**PLAINTIFF LUNA VANEGAS' BRIEF IN SUPPORT OF THE MOTION TO COMPEL A FULL AND COMPLETE ANSWER TO INTERROGATORY NO. 9**

Plaintiff Jose Ageo Luna Vanegas ("Plaintiff" or "Luna Vanegas"), by and through his attorneys, submits this Brief in Support of his Motion to Compel a Full and Complete Answer to Interrogatory No. 9 of Plaintiff's First Set of Interrogatories to Defendant Signet Builders, Inc. ("Defendant" or "Signet").

## I. FACTUAL BACKGROUND

This is a Fair Labor Standards Act (FLSA) action for unpaid overtime. ECF #1. The only disputed issue presented by the initial complaint is Defendant's affirmative defense that Plaintiff was overtime exempt under the FLSA's agricultural exemption. 29 U.S.C. §§ 203(f) and 213(b)(12). A motion to file a second amended complaint which, *inter alia,* alleges that Defendant's failure to pay overtime was willful, is pending. ECF #92.

On December 2, 2022, Plaintiff served the following interrogatory on Signet:

**INTERROGATORY NO. 9:**

Please state the following:

a. The year that Signet, or its predecessor company(ies) (including the company referred to on Signet's web site as having been founded in 1994) began to perform agricultural construction projects;

b. Any years in which Signet or its predecessor company(ies) paid overtime premiums to employees who worked more than 40 hours per workweek on agricultural construction projects.

Ex. A. Signet responded on January 17, 2023, as follows:

**RESPONSE:** Defendant objects to this Interrogatory because it is overbroad, irrelevant, and unduly burdensome and is not proportional to the needs of this case. Subject to foregoing, Defendant answers that it began performing agricultural construction projects in 1995. Further answering, Defendant answers that the only instances in which it has paid overtime to H-2A visa holders and U.S. employees in corresponding employment who worked on agricultural construction projects on farms where the structure would be used in conjunction with raising livestock or poultry on those respective farms is when it has been required to do so by the law of the state in which the work was performed. In response to Interrogatory 2, Defendant has identified the relevant projects (including the dates of the project) for which Plaintiff was paid overtime pursuant to state law.

Ex. B.

Upon receipt of this answer, Plaintiff's counsel contacted Defendant's counsel on February 16, 2023, pointing out that the above answer did not respond to the question asked by Interrogatory 9. Ex. C. Specifically, the answer to part b. only responded with respect to H-2A visa holders and U.S. workers in corresponding employment,[1] stating that they were only paid overtime when state law required overtime. *Id.* The answer did not indicate whether overtime was paid between 1995 (when Signet admits it began working on agricultural construction

---

[1] "U.S. workers in corresponding employment" refers to U.S. workers performing jobs described in an employer's H-2A applications. *See* 20 C.F.R. § 655.103 (definition of "corresponding employment"). Thus, the answer is limited to the period that Signet was using H-2A workers.

projects) and 2013 when Signet began using H-2A workers.[2] Moreover, the answer only addressed "agricultural construction projects on farms where the structure would be used in conjunction with raising livestock or poultry on those respective farms" instead of the much broader definition of "agricultural construction project" provided by the interrogatories—i.e., "**Agricultural Construction Project** refers to construction projects that Signet contends were performed "on a farm" as that phrase is used in 29 U.S.C. § 203(f)." Ex. A at p. 4.

Defendant responded on March 8 stating that whether Signet paid overtime in the past was "irrelevant" but amended its answer to say that it had not paid overtime during the past ten years on agricultural construction projects as narrowly defined by Signet, rather than as defined by the interrogatory. Ex. D Letter of March 8. Plaintiff responded immediately stating,

> Whether Signet paid overtime in the past is highly relevant. The agricultural exemption has not changed at all since Signet was first organized. Thus, if it paid overtime in the past and then changed to not paying overtime, the fact of that change and the reason for it are relevant both to Signet's current claim to the agricultural exemption as well as to the question of willfulness.

Ex. E (Letter of March 9). Signet's counsel responded by e-mail on March 10 stating,

> Prior to 2013, there was different ownership of the company. The current owners do not know what pay practice was in place in those years and have been unable to locate any pay records from that time period. Since then, as noted previously, the company has not paid overtime under federal law for this work.

Ex. F (Email dated March 10). This was the first time that Defendant had claimed that it did not know the pay practices of the company prior to 2013—a claim which contradicted its initial answer to the interrogatory that Signet started performing agricultural construction in 1995. Plaintiff wrote once again to Defendant stating,

---

[2] Data available from the Department of Labor indicates that 2013 was the first year that Signet Builders, Inc. began to use the H-2A program. This information is publicly available at Performance Data, U.S. Dep't of Labor, https://www.dol.gov/agencies/eta/foreign-labor/performance. (last reviewed on April 14, 2023).

> You now say that "the current owners do not know what pay practice was in place [prior to 2013]." But in your original answer, the current owners had more than enough knowledge to say that Signet Builders, Inc. began performing agricultural construction projects in 1995. Moreover, according to the Texas Secretary of State, Signet Builders, Inc. was registered as a Texas corporation in 2002 with Orville Schonefeld II acting as president. He was also the President of the corporation when it dissolved in 2021 and is the President of the other Signet Companies that we are seeking to add through the Second Amended Complaint. Thus, your claim that "current owners" don't know what was going on prior to 2013 is simply insupportable.

Ex. G. Counsel for Plaintiff again requested that Defendant provide a complete answer to the interrogatory but has heard nothing more from Defendant, necessitating this motion to compel.

## II. ARGUMENT

### A. Signet is required to answer Plaintiff's Interrogatories.

Federal Rule of Civil Procedure 26(b)(1) permits a party to obtain discovery as to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Relevance is not a high bar" and where "relevance is in doubt, courts should err on the side of permissive discovery." *EEOC v. Heart of CarDon, LLC*, 339 F.R.D. 602 (S.D. Ind. 2021) citing *Wiginton v. CB Richardson Ellis, Inc.,* 229 F.R.D. 568, 577 (N.D. Ill. 2004). Under the proportionality standard, factors in determining whether a matter is proportional include, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Under Federal Rule of Civil Procedure 33, a party is allowed to serve relevant interrogatories on another party, defining relevant as relating to “any matter that may be inquired into under Rule 26(b).” Fed. R. Civ. P. 33. If a party fails to respond to an interrogatory, the requesting party may move the Court to compel the opposing party to respond. See Fed. R. Civ. P. 37(a)(2)(B). “An evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer or respond.” Fed. R. Civ. P. 37(a)(3).

Signet’s failure to provide a complete response to Luna Vanegas’ Interrogatory No. 9 qualifies as a failure to answer Interrogatory No. 9 and Luna Vanegas is entitled to a full and complete response under Rule 33.

**B. The information sought is relevant and proportional to the needs of the case.**

The information sought in Interrogatory No. 9 b.—a statement identifying "any *years* in which Signet or its predecessor company(ies) paid overtime premiums to employees who worked more than 40 hours per workweek on agricultural construction projects”—is highly relevant to Plaintiff’s claims in this case. *See* Ex. A, emphasis added. Signet has defended its application of the agricultural exemption by, among other things, asserting that the exemption has long been applied to construction workers like Signet's. *See, e.g.,* ECF #29 at 19-24, 28-33. Evidence that Signet paid overtime to employees working on agricultural construction projects prior to 2013 would significantly undercut that argument, which is why Plaintiff asked the interrogatory in the first place. Evidence that Signet paid FLSA overtime to construction workers in years prior to 2013 would also have obvious bearing on the willfulness of Defendant's violation. Plaintiff believes that, prior to 2013, Defendant knew the exemption did not apply to its workers and paid

overtime until it began importing workers under the H-2A program in approximately 2013.[3] After that point Signet began relying on the Department of Labor's approval of its H-2A visa applications (which are visas for workers falling within the FLSA or IRS definition of agriculture) to claim the exemption. Plaintiff has alleged in his proposed second amended complaint that Defendant obtained its H-2A temporary employment certifications by misrepresenting information on their temporary employment certification applications, including falsely claiming that it would be providing workers for "Farm Companies" when in most cases it was not. ECF #92-1 at ¶¶26, 56-57. Again, evidence that Signet paid its workers overtime prior to obtaining overtime exempt H-2A workers under these allegedly false pretenses would tend to support Plaintiff's allegation that Signet knew the agricultural exemption did not apply to its workers and that its failure to pay overtime was willful.

Moreover, it is important that Defendant respond to the interrogatory using the definition of "agricultural construction project" that Plaintiff deliberately chose for his interrogatory. Defendant's persistent use of a far narrower definition of "agricultural construction project" in its answer further suggests that it is deliberately trying to avoid answering the question that Plaintiff asked.

Other than relevance, Defendant's only other objection to the interrogatory is that it is "overbroad . . . unduly burdensome and not proportional to the needs of the case.” Ex. B, p. 10. However, the information sought in the second part of Interrogatory No. 9 is quite limited in scope and can hardly be described as burdensome or disproportional. It is limited temporally to

[3] As stated in Footnote 2, publicly available data on the Department of Labor website suggests that Signet began using the H-2A program in 2013. Performance Data, U.S. Dep’t of Labor, https://www.dol.gov/agencies/eta/foreign-labor/performance. Counsel for Luna Vanegas reviewed this website on April 14, 2023.

the period that Signet has been constructing agricultural construction projects, which Signet admits started in 1995. *See* Signet's Response to Interrogatories, Ex. B. The type of information requested is likewise narrow in scope. Plaintiff is not asking for expansive financial records, but merely the identification of which "years" since 1995 Signet paid overtime premiums to employees performing work on agricultural construction projects. *Id*.

The minimal burden on Signet of indicating which years it paid overtime premiums to employees performing construction work on agricultural construction projects compared to the highly relevant nature of this information merits an order compelling Signet to provide complete answers to Interrogatory No. 9.

**B. The information sought is within Defendant's possession and control.**

Long after Defendant served its initial response to the interrogatory, Defendant's counsel came up with a new reason for not answering the interrogatory—i.e., that there was "different ownership of the company" prior to 2013, and that the current owners do not know what pay practice was in place prior to 2013. Ex. D, email of March 8. To the extent that assertion constitutes an objection to the interrogatory, it was untimely and, therefore, waived. *See* Fed. R. Civ. Pro. 33; *Alloc, Inc. v Unilin Decor, N.V.,* No. 02-C-1266, 2006 WL 2583431 at *1 (E.D. Wis. Sept. 5, 2006).

The claim that the current owners do not know Signet's pay practices before 2013 is patently untrue in any event. In their original response, Signet had enough knowledge about the early operations of Signet Builders to say that it began performing agricultural construction projects in 1995. Moreover, Signet Builder's current web page at https://www.signet.us states that the company was "founded in 1994" and the "Our Team" page, https://www.signet.us/our-team, lists Joey Schonefeld (a/k/a Orville Schonefeld II) as the "founder and owner" of Signet.

(Web page visited April 13, 2023). In other words, the founder and owner of Signet is still responsible for the company and available to provide answers to the interrogatory. What is more, according to the Iowa Secretary of State and the Texas Secretary of State, Signet Builders, Inc. was registered as a corporation both in Texas and in Iowa in 2002 with Orville J. Schonefeld II listed as president. Ex. H, Ex. I. Orville J. Schonefeld II was still the president of Signet Builders, Inc. when it dissolved in 2021 and is the president of the other Signet Companies that Plaintiff is seeking to add through the Second Amended Complaint. ECF #85-4. Finally, the Articles of Dissolution of Signet Builders, Inc. make clear that Orville J. Schonefeld II remains liable for the debts of Signet Builders, Inc. Ex. J. Thus, it is clearly untrue that Signet's "current owners" don't know about Signet's pay practices prior to 2013.

## III. CONCLUSION

For the foregoing reasons, Luna Vanegas respectfully requests that this Court order Signet to provide a full and complete answer to Plaintiff's Interrogatory No. 9.

Respectfully submitted this 20th day of April, 2023,

*s/ Jennifer J. Zimmermann*
Jennifer J. Zimmermann, WI Bar No. 1067828
jjz@legalaction.org
Erica Sweitzer-Beckman, WI Bar No. 1071961
elb@legalaction.org
LEGAL ACTION OF WISCONSIN
744 Williamson Street, Suite 200
Madison, WI 53703
Tel: 608-256-3304
Fax: 608-256-0510

Edward Tuddenham
edwardtuddenham@gmail.com
EDWARD TUDDENHAM
42 Ave. Bosquet
Paris
France

Tel: +33 68 479 8930

Lorraine Gaynor
IA Bar No. AT0011144
*Admitted Pro Hac Vice*
lgaynor@iowalaw.org
IOWA LEGAL AID
1700 S. 1st Avenue, Suite 10
Iowa City, IA 52240
Tel: 319-351-6570

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2023 a copy of the foregoing was filed electronically using the CM/ECF system. Notice of this filing will be sent by operation of that system to all parties indicated of the electronic filing receipt.

*s/Jennifer J. Zimmermann*

Jennifer J. Zimmermann, WI Bar No. 1067828
jjz@legalaction.org
LEGAL ACTION OF WISCONSIN
744 Williamson Street, Suite 200
Madison, WI 53703
Tel: 608-256-3304
Fax: 608-256-0510