IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSE AGEO LUNA VANEGAS,
on behalf of himself and all others similarly situated,

|                          |              |                      |
|--------------------------|--------------|----------------------|
|                          | Plaintiff,   | OPINION and ORDER    |
| v.                       |              |                      |
|                          |              | 21-cv-54-jdp         |
| SIGNET BUILDERS, INC.,   |              |                      |
|                          | Defendant.   |                      |

---

Plaintiff Jose Aego Luna Vanegas alleges that defendant Signet Builders, Inc., violated his rights under the Fair Labor Standards Act by failing to pay him overtime for construction work that he performed on farms. Two matters are before the court. First, Luna Vanegas asks to amend his complaint to add a new plaintiff and new claims and defendants. Dkt. 92. Second, Luna Vanegas has renewed his motion for conditional certification of an FLSA collective of Signet employees who worked on "agricultural construction projects." Dkt. 83. He also asks the court to approve notice to the collective. *Id.* Signet raises a host of objections to both motions.

The court will grant Luna Vanegas's motions. Luna Vanegas's amended complaint states plausible claims for relief, and he has made the modest showing necessary to conditionally certify the collective. Signet's arguments in opposition to the motions are based on affirmative defenses and disputed facts. These are premature; the issues Signet identifies will be resolved later in the litigation. The court will accept Luna Vanegas's amended complaint and conditionally certify the collective. Luna Vanegas's proposed notice will be approved, with adjustments to improve accuracy and clarity.

BACKGROUND

Plaintiff Jose Ageo Luna Vanegas filed this lawsuit in January 2021. Luna Vanegas is a citizen of Mexico. Vanegas alleged that between 2004 and 2019, he worked for Signet under an H-2A guestworker visa, which allows citizens of other countries to perform agricultural work in the United States on a temporary basis. Signet is a construction company that contracted to build "livestock confinement structures" on farms in Wisconsin, Iowa, Indiana, and other states. Dkt. 1, ¶ 16. Vanegas frequently worked more than 40 hours per week, but Signet did not pay him overtime wages. Vanegas contended that Signet's failure to pay him overtime violated his rights under the Fair Labor Standards Act (FLSA), which requires employers to pay workers at a rate of at least one and one-half times their regular rate of pay for each hour they work beyond 40 in a workweek. 29 U.S.C. § 207(a)(1). Vanegas moved for conditional certification of an FLSA collective of Signet workers who worked under a guestworker visa. Dkt. 15.

Signet moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Signet based its motion on the affirmative defense that Luna Vanegas's work, as described in the complaint, fell under the FLSA's exemption for "employee[s] employed in agriculture." 29 U.S.C. § 213(b)(12). The court agreed with Signet that Luna Vanegas's allegations showed that his work was incidental to the agricultural activity of raising livestock, so his work fell within the agricultural exemption. Dkt. 52. The court denied Luna Vanegas's motion for conditional certification of an FLSA collective as moot and dismissed the case.

Luna Vanegas successfully appealed. The court of appeals concluded that the allegations in the complaint did not conclusively establish that Luna Vanegas's work fell within the

2

agricultural exemption, so Signet was not entitled to dismissal on that ground at the pleading stage. *Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 645 (7th Cir. 2022). Signet filed a petition for rehearing and rehearing *en banc*, but the court of appeals denied the petition.

The case was remanded to this court in October 2022. Luna Vanegas has since filed two motions: (1) a motion to amend his complaint to add a new plaintiff, new defendants, and new claims; and (2) a renewed motion for conditional certification of an FLSA collective.

ANALYSIS

**A. Motion to amend complaint**

Luna Vanegas asks to amend his complaint to: (1) add Jose Luis Garcia Gonzalez as a named plaintiff; (2) allege that Signet's FLSA violations were willful; (3) add as defendants three companies related to Signet, as well as the officers of those companies; and (4) add state-law claims for breach of contract, quantum meruit, and unjust enrichment. Dkt. 92.[1] Under Federal Rule of Civil Procedure 15(a), the court should freely grant leave to amend when justice so requires. But the court may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the proposed amendment is futile. *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848–49 (7th Cir. 2002).

---

[1] Luna Vanegas has filed three motions related to amending his complaint: a motion for leave to file an amended complaint, Dkt. 70; an amended motion to file an amended complaint, Dkt. 80, and a motion to file a second amended complaint, Dkt. 92. Luna Vanegas states that the most recent proposed complaint incorporates all of his proposed amendments and supersedes his prior motions. Dkt. 92. The court will deny the prior motions, Dkt. 70 and Dkt. 80, as moot.

Signet has no objection to adding Garcia Gonzalez as a plaintiff. But it opposes the other proposed amendments on the ground that they are futile. In determining whether amendment is futile, the court considers the proposed amendment under the same standards governing a motion to dismiss for failure to state a claim under rule 12(b)(6). *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). So the question is whether the facts alleged in the amended complaint state plausible claims for relief. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020).

## 1. Willful violations

Luna Vanegas alleges in his proposed amended complaint that defendants' violations of the FLSA's overtime provisions were willful. *See* Dkt. 92-1, ¶ 64. Whether defendants' violations were willful determines which statute of limitations applies to Luna Vanegas's FLSA claim: the default limitations period under the FLSA is two years, but willful violations are subject to a three-year statute of limitations. 29 U.S.C. § 255(a). An employer acts willfully when it knows or shows reckless disregard for whether its actions violated the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Luna Vanegas alleges in his amended complaint that "[d]efendants' violations of the FLSA's overtime provisions were willful" and that "[d]efendants showed reckless disregard as to whether its conduct was prohibited by the FLSA." Dkt. 92-1, ¶ 64. Although those allegations are conclusory, courts in this circuit have consistently held that FLSA plaintiffs do not need to plead specific facts to show that a defendant's violations were willful. *See, e.g., Divine v. Volunteers of Am. of Ill.*, 319 F. Supp. 3d 994, 1001 (N.D. Ill. 2018); *Kammer v. CET Inc.*, 2021 WL 2632441, at *2 (N.D. Ind. June 25, 2021). Plaintiffs are unlikely to know facts relevant to the defendant's state of mind prior to discovery. *See Ivery v. RMH Franchise Corp.*,

280 F. Supp. 3d 1121, 1135 (N.D. Ill. 2017). So at the pleading stage, "all that is required is a general allegation that the defendant's actions were willful." *Divine*, 319 F. Supp. 3d at 1001. Luna Vanegas's conclusory allegations are enough to allege a willful FLSA violation at this stage of the case.

Signet contends that it could not have acted recklessly because the Department of Labor certified that Luna Vanegas was performing "agricultural work" when it approved his H-2A guestworker visa. But that argument goes to the ultimate question of whether the alleged violations were willful, which cannot be resolved at the pleading stage. Whether an FLSA violation was willful is a determination normally reserved for the trier of fact. *See Bankston v. Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995) ("It is the jury's province to decide which limitations period, two or three years, applies in light of the plaintiffs' evidence that the defendants acted willfully."). The fact that Luna Vanegas received an agricultural visa will be relevant to determining whether defendants were reckless, but it isn't dispositive. The criteria for receiving an H-2A visa are broader than the FLSA agricultural exemption. *See Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 645 (7th Cir. 2022). And in any event, Luna Vanegas alleges that defendants mischaracterized the nature of his work on his visa applications. *See* Dkt. 92-1, ¶ 26. Whether the alleged violations were willful in light of those facts will be resolved later in the case.

### 2. Claims against new corporate defendants

Luna Vanegas's initial complaint named as defendant only Signet Builders, Inc. Luna Vanegas seeks to add claims against three affiliated entities that managed the construction projects that Luna Vanegas worked on: Signet Construction, LLC, Signet Construction, Inc., and Northridge Construction, Inc. Luna Vanegas alleges that these companies has the same

corporate officers as Signet Builders and that all of Signet's companies "operate as a single entity." Dkt. 92-1, ¶ 11. Luna Vanegas states that he did not originally name the other Signet companies in his initial complaint because he was unaware that he worked for those entities in addition to Signet Builders, Inc.

Signet contends that Luna Vanegas's proposed claims are time-barred. Luna Vanegas last worked for Signet in December 2019. So even if a three-year statute of limitations applies to Luna Vanegas's claims, Signet argues, Luna Vanegas had to amend his complaint by December 2022 for his new claims to be timely. Luna Vanegas filed his proposed amended complaint in February 2023. Luna Vanegas contends that his claims are timely because they relate back to his initial complaint filed in January 2021 and because the statute of limitations should be equitably tolled to account for the year that the case was pending in the court of appeals.

Whether Luna Vanegas's new claims are timely cannot be resolved based on the facts in his complaint. Dismissal based on the statute of limitations is an affirmative defense, and plaintiffs are not required to plead facts to overcome affirmative defenses. *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018). Accordingly, the court can dismiss a complaint as untimely only if the facts in the complaint establish an "impenetrable" statute of limitations defense. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Put another way, whether Luna Vanegas's proposed amendment is futile turns on whether there is "a conceivable set of facts, consistent with the [proposed amended complaint], that would defeat a statute of limitations defense." *Sidney Hillman Health Ctr. Of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

6

Luna Vanegas's proposed amendment is not futile because it is conceivable that his new claims relate back to his initial complaint under Federal Rule of Civil Procedure 15(c). Rule 15(c)(1) provides that an amendment that "changes the party" against whom a claim is asserted relates back to the initial complaint if four conditions are met: (1) the claim arises out of the same facts as an existing claim; (2) the new party had notice of the initial claim within 90 days of when it was filed; (3) the new party would not be prejudiced; and (4) the new party knew, or should have known, that it would have been sued "but for a mistake concerning the proper party's identity." Rule 15(c) must be construed liberally. *Staren v. Am. Nat'l Bank & Tr. Co.*, 529 F.2d 1257, 1263 (7th Cir. 1976). Accordingly, courts in this circuit have allowed plaintiffs to use Rule 15(c) to add new parties without substituting an already named party. *See Brown v. SportsArt Am., Inc.*, 2012 WL 5304157, at *4 (N.D. Ill. Oct. 25, 2012); *Niewiedzial v. Wexford Health Sources, Inc.*, 2023 WL 3304703, at *3 (S.D. Ill. May 8, 2023); *see also Joseph v. Elan Motorsports Techs. Racing Corp.,* 638 F.3d 555, 560 (7th Cir. 2011) (question is whether party knew that plaintiff "would have sued him instead or in addition to suing the named defendant").

A plaintiff does not have to show that his new claims satisfy Rule 15(c) to be allowed to add them to his complaint under Rule 15(a). *See Joseph*, 638 F.3d at 559. Instead, courts should allow the amendment and resolve the statute of limitations issue after the new defendants are in the case. *See id.* at 559–60. ("The judge should have allowed the amendment and then, believing that the amended complaint did not relate back, should have rendered judgment on the merits."). In this case, whether Rule 15(c) applies to Luna Vanegas's claims cannot be resolved based on the allegations in his amended complaint. The claims asserted against the new defendants are based on the same facts as in the initial complaint. But there is

no basis to determine whether the new defendants received notice of the original complaint within 90 days and whether the new defendants knew, or should have known, that Luna Vanegas would have sued them in addition to Signet Builders, Inc in the absence of mistake.

Signet contends that Luna Vanegas's decision to sue only Signet Builders, Inc. was not a "mistake" because he could have learned about the other entities if he had exercised due diligence. That argument goes to the reasonableness of Luna Vanegas's mistake, which is irrelevant to whether an amendment relates back under Rule 15(c). *See Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 549 (2010). Instead, the question turns on whether the new defendants knew, or should have known, that Luna Vanegas would have sued them had he known of their existence. *Id.* It is conceivable that the new defendants knew, or should have known, that they would have been sued absent a mistake from Luna Vanegas, so Luna Vanegas may add them as defendants. Because the court is allowing Luna Vanegas to amend his complaint on the ground that the new claims may relate back under Rule 15(c), the court need not consider the merits of Luna Vanegas's argument based on equitable tolling at this time.

### 3. Claims against individual corporate officers

Luna Vanegas also seeks to assert claims against three of Signet's corporate officers: Orville J. Schonefeld II (president), Natalie Farmer (vice president) and Rodney Schonefeld (chief financial officer). Signet contends that the proposed amendments are futile because (1) the claims against the individual officers are time-barred; and (2) Luna Vanegas's allegations do not suggest that defendants are individually liable under the FLSA. Signet's statute of limitations argument fails for the same reasons why it failed with respect to the corporate defendants: dismissal based on the statute of limitations is an affirmative defense,

and Luna Vanegas's complaint does not conclusively establish that the claims against the individual defendants are untimely.

As for whether Luna Vanegas has stated a claim against the individual defendants, the complaint alleges enough facts to suggest that they are liable for his claims. An individual can be liable for an FLSA violation if they are an "employer." 29 U.S.C. § 203(d). To determine whether an individual is an employer, courts consider (1) whether the individual has the power to hire and fire; (2) whether he supervises and controls employee work schedules or conditions; (3) whether he determines the rate and method of payment; and (4) whether he maintains employment records. *George v. Badger State Indus.*, 827 F. Supp. 584, 587 (W.D. Wis. 1993) (quoting *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). Luna Vanegas alleges that the officers "assign[ed]" him to work for certain Signet entities and that they "ma[de] the determination to treat [him] as FLSA overtime exempt." Dkt. 92-1, ¶¶ 54, 55. Those allegations suggest that the officers controlled Luna Vanegas's work schedules and determined his rate of pay. Accepting those allegations as true, it is plausible that the officers were employers under the FLSA. Luna Vanegas may amend his complaint to add them as defendants.

### 4. State-law claims

Luna Vanegas's amended complaint adds a state-law claim for breach of contract. He alleges that his employment contract with Signet states that he will receive "the highest of the prevailing wage, [adverse effect wage rate], or federal or state minimum wage." Neither party explains what the "adverse effect wage rate," or AEWR, is: it appears to be the minimum wage applicable to employees performing work under an H-2A agricultural visa. *See* 20 C.F.R. § 655.122(l). The theory behind Luna Vanegas's breach of contract claim is that even though

he was classified as an H-2A agricultural worker, he was actually performing construction work and was entitled to the minimum wage applicable to H-2B non-agricultural workers. The minimum wage for construction workers under an H-2B visa is "much higher" than the AEWR. Dkt. 92-1, ¶ 69. So by paying Luna Vanegas only slightly above the AEWR, Signet breached its promise to pay Vanegas the highest of the prevailing wage, AEWR, or federal minimum wage.

Those allegations state a plausible claim for breach of contract. The allegations are straightforward: Luna Vanegas alleges that Signet agreed to pay Luna Vanegas the federal minimum wage, and it did not do so. Signet contends that this claim fails because nothing in the contract states that Luna Vanegas would receive the minimum wage of an H-2B worker. But as alleged, the parties *did* agree to pay Luna Vanegas the "federal minimum wage;" the dispute is over what the term "federal minimum wage" means. Luna Vanegas alleges that the provision entitled him to the minimum wage applicable to the work he actually performed. The reasonableness of that interpretation is another issue that cannot be resolved on the basis of the allegations in the complaint. The meaning of a given contract provision must be determined in light of the entire contract. *Folkman v. Quamme*, 2003 WI 116, ¶24, 264 Wis. 2d 617, 635, 665 N.W.2d 857, 866. Neither party submitted copies of Luna Vanegas's contracts, so the court cannot determine what "federal minimum wage" means in its proper context. Luna Vanegas's amended complaint alleges a plausible contract claim, so the proposed amendment is not futile.

Luna Vanegas also asserts quantum meruit and unjust enrichment claims in the alternative to his contract claim. Quantum meruit and unjust enrichment are "quasi-contractual" theories of relief grounded in equitable principles, and they can be invoked only

in the absence of an enforceable contract. *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 (7th Cir. 2011). Signet contends that Luna Vanegas has pleaded himself out of court with respect to these claims because they conflict with his allegations that there was an enforceable contract governing the terms of Luna Vanegas's employment. But Luna Vanegas's allegations aren't contradictory. Luna Vanegas contends that if the wage offered in his work contract was less than the minimum wage, the wage term in the contract is illegal and void as against public policy. Under those circumstances, the formal contract would not be enforceable and Luna Vanegas could recover in equity. So he may add his quasi-contract claims to his lawsuit.

Although neither party raises this issue, Luna Vanegas's amended complaint does not expressly state that he seeks to bring his state-law claims in a representative capacity. Luna Vanegas's proposed FLSA collective would cover only his FLSA claims. If Luna Vanegas wishes to bring related state-law claims on behalf of other similarly situated Signet employees, he must move to certify a state-law class action under Federal Rule of Civil Procedure 23. *See Ervin v. OS Rest. Servs.*, 632 F.3d 971, 974 (7th Cir. 2011). Any motion to certify a Rule 23 class must be filed by the deadline to move for decertification of the FLSA collective.

## B. Motion for conditional certification of an FLSA collective

Luna Vanegas asks the court to conditionally certify an FLSA collective comprising "[a]ll U.S. and H-2A workers who worked on agricultural construction projects" for Signet at any time on or after January 2019. Dkt. 83. He also asks the court to approve his proposed notice to potential opt-in plaintiffs. Signet opposes the certification motion in its entirety. But it contends that if the court does grant the motion, the collective should be limited to employees who worked in Wisconsin because the court does not have personal jurisdiction over

11

claims based on alleged FLSA violations that took place in other states. Signet also objects to several aspects of Luna Vanegas's proposed notice.

### 1. Conditional certification

District courts in this circuit—and others across the county—have adopted a two-step approach to collective action certification. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008). First, the plaintiff must "make a minimal showing that others in the potential class are similarly situated." *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). This first step is a lenient test: it requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Jirak*, 566 F. Supp. 2d at 848 (quoting *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). Because "the similarly situated standard is a liberal one, it typically results in conditional certification of a representative class." *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) (internal quotation marks omitted).

Second, after the parties have engaged in discovery and the opt-in process is complete, the court undertakes a more stringent analysis of the similarities among collective members. *Mielke*, 313 F. Supp. 2d at 762. At step two, the court considers whether "the plaintiffs are in fact similarly situated to those who have opted in." *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 629 (W.D. Wis. 2009). If they are not, the court will decertify the collective.

On Luna Vanegas's motion for conditional certification, the court considers only whether he has made the modest factual showing required at step one. To determine whether Luna Vanegas has satisfied step one, the court evaluates the record before it, including the complaint and any evidence that has been submitted. *Sjoblom v. Charter Communs., LLC*, 571 F. Supp. 2d 961, 968 (W.D. Wis. 2008). The court does not reach the merits of the claim.

Rather, Luna Vanegas must demonstrate only that there is some factual nexus that connects them to other potential plaintiffs as victims of an unlawful practice. *Id.* at 967. Luna Vanegas must adduce evidence that the proposed collective action will "facilitate efficient resolution of common questions and common answers." *Foshinder-Bittorf v. SSM Health Care of Wis., Inc.*, 2013 WL 3287634, at *4 (W.D. Wis. Mar. 21, 2013).

Luna Vanegas has met his initial burden to show that the other members of the proposed collective are similarly situated, with one caveat. The record shows that Signet treated all H-2A visa holders who worked on agricultural construction projects as exempt from the FLSA. *See* Dkt. 85-2, at 10. Accordingly, it did not pay any of those employees overtime if they worked more than 40 hours in a work week. Luna Vanegas contends that this practice was unlawful because the work performed on those projects was not "agriculture" as the term is defined in the FLSA. Signet admitted in its answer to Luna Vanegas's initial complaint that all of Signet's H-2A workers performed the same or substantially similar construction job duties. *See* Dkt. 1, ¶ 24 (initial complaint); Dkt. 61, ¶ 24 (Signet's answer). So the question whether the work performed by H-2A workers on farms was "agriculture" under the FLSA may have a common answer for all of those workers.

The problem is that Luna Vanegas's proposed collective is overbroad. It includes all H-2A visa holders who worked on agricultural construction projects, as well as "[a]ll U.S. workers" who worked on those same projects. There were some U.S. citizens who performed the same work as H-2A visa holders, and Signet treated those domestic employees as exempt from the FLSA. Those workers are similarly situated to Luna Vanegas and the other H-2A workers. *See Altamirano-Santiago v. Better Produce, Inc.*, 2019 WL 3457325, at *3 (C.D. Cal. July 30, 2019) ("potential factual dissimilarities here, such as whether a farmworker was an H-2A

worker or domestic worker, do[] not defeat collective treatment"). However, there were also U.S. citizens who worked on those projects in other roles, including civil engineers, superintendents, and foremen. *See* Dkt. 97, ¶ 5. Luna Vanegas hasn't shown that those employees had similar responsibilities to H-2A workers or that all of them are hourly employees subject to the FLSA's overtime rules.

The task is to craft a collective definition that includes domestic workers who performed the same tasks as H-2A workers and who were not otherwise exempt from the FLSA because they were administrators, executives, or professionals. *See* 29 U.S.C. § 213(a)(1). As for the tasks H-2A workers performed, most of Signet's H-2A applications described their tasks as follows:

> On farms, measure and lay out livestock building. Excavate footings and level the earth to grade specifications. Tie rebar, position aluminum wall forms, and place concrete. Unload materials, layout lumber and steel, tin sheets, trusses, and other components for building livestock confinement structures. Build and erect walls and trusses. Lift tin sheets to roof and sheet walls, install doors and caulk structure. Install and repair feeders, feed tanks and help assemble feed lines: repair and install curtains and gates. Clean up job sites. Occasional use of forklift upon employer-provided certification. Must be able to lift and carry 50lbs/75yds.

*See* Dkt. 86-1. As for the administrative, executive, and professional exemptions, those exemptions apply if the worker is salaried; his work is primarily directly related to management of the business, management of other employees, or duties requiring specialized knowledge; and he is not a "manual laborer[]," among other things. *See* 29 CFR § 541.3. With that in mind, the court concludes that an appropriate collective definition would encompass all H-2A workers who worked on agricultural construction projects for Signet, as well as all hourly-paid,

non-managerial U.S. workers who provided manual labor on agricultural construction projects for Signet. The court will conditionally certify a collective with that definition.

Signet provides four arguments why the conditional certification motion should be denied, none of which is persuasive. First. it contends that Luna Vanegas's evidence is insufficient because he has not provided declarations from other Signet employees who worked at different building sites. But Luna Vanegas doesn't need to present his evidence in a specific form. Signet's responses to Luna Vanegas's complaint and interrogatories suggest that all members of the proposed collective performed similar work on similar types of projects, and that all of them were treated as exempt from the FLSA. That is enough to make the minimal showing required at step one. Whether the proposed collective members are, in fact, similarly situated will be determined at step two of the certification process.

Second, Signet contends that there is insufficient interest to warrant a collective action because only one additional plaintiff has joined the case so far. But the number of opt-in plaintiffs is irrelevant to determining whether a collective should be conditionally certified. It is unsurprising that there are not many opt-in plaintiffs at this point because Luna Vanegas has not sent out judicially-approved notice to the entire collective. This is another argument best saved for step two of the certification process. *See De Leon v. Grade A Constr., Inc.*, No. 16-cv-348-jdp, 2017 WL 6375821, at *2 (W.D. Wis. Dec. 13, 2017) (considering interest at the decertification stage).

Third, Signet contends that Luna Vanegas does not adequately represent the proposed collective because the collective includes employees who worked for Signet after Luna Vanegas stopped taking Signet jobs 2019. This argument fails. The record shows that Signet's current "agricultural construction" employees are performing the same sort of construction work that

15

he performed, and Signet has not changed its policy of treating those employees as exempt from the FLSA. Signet doesn't identify any changes to the terms or conditions of its agricultural construction jobs that it's made since Luna Vanegas left that make him differently situated than the rest of the collective.

Fourth, Signet says that conditional certification should be delayed pending resolution of its petition for a writ of certiorari with the United States Supreme Court challenging the Seventh Circuit's decision to let this case go forward. Signet argues that it would be a waste of resources to send notice to proposed collective members if the Court reverses the Seventh Circuit and dismisses the case. Signet provides no authority that delaying conditional certification is proper under these circumstances. The Seventh Circuit issued its mandate and remanded the case to this court in October 2022, more than four months before Luna Vanegas renewed his conditional certification motion. If Signet wished to stay the mandate pending the Supreme Court's disposition of its certiorari petition, it should have promptly sought that relief in the court of appeals.

In any event, Signet makes no showing that delaying certification would save resources in this case. It provides no argument why the Supreme Court is likely to grant the petition or that the court is likely to reverse the Seventh Circuit's decision. *See In re A.F. Moore & Assocs.*, 974 F.3d 836, 840 (7th Cir. 2020) (describing standard for staying court of appeals' mandate). This court will not delay conditional certification based on Signet's speculation that the Supreme Court may choose to take up the case.

### 2. Personal jurisdiction

Signet requests that if the court grants the conditional certification motion, the collective should be limited to employees who performed work in Wisconsin. Signet contends

16

that the court does not have personal jurisdiction over the claims of plaintiffs who performed work in other states. The court does not have general jurisdiction over claims against Signet because Signet is not a citizen of Wisconsin. As for specific jurisdiction, Signet contends that even though the case is styled as a collective action, the court would have jurisdiction over only claims that arose from Signet's contacts with Wisconsin.

Signet's argument is based on the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017). That case concerned a mass-tort action brought in California state court. The mass-tort action included claims from plaintiffs who were not citizens of California and who were not harmed by Bristol-Myers in California. Bristol-Myers was not a California citizen, so the issue before the court was whether California had specific jurisdiction over the out-of-state plaintiffs' claims. The Court concluded that it did not, relying on the principle that specific jurisdiction requires a connection between the forum state and the plaintiff's claim. *Id.* Because the out-of-state plaintiffs were not harmed by Bristol-Myers' conduct in California, the California court did not have the authority to hear those plaintiffs' claims in the mass-tort action.

The Seventh Circuit recently concluded that the rule in *Bristol-Myers* does not apply to class actions based on violations of federal law that are brought under Federal Rule of Civil Procedure 23. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 446 (7th Cir. 2020). In that context, "the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." *Id.* at 447. However, the Seventh Circuit has not addressed whether *Bristol-Myers* applies to collective actions brought under the FLSA. The circuits that have reached the issue are split. The Third, Sixth, and Eighth Circuits have all concluded that *Bristol-Myers* applies to FLSA collective actions, so

the court must have personal jurisdiction over the claims of each opt-in plaintiff. *Canaday v. Anthem Cos.*, 9 F.4th 392 (6th Cir. 2021); *Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861 (8th Cir. 2021). The First Circuit reached the opposite result and concluded that only the named plaintiffs' FLSA claims needed to arise from the defendants' contacts with the forum state. *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022).

Signet and Luna Vanegas disagree about which circuits got it right. But the court declines to resolve the issue here. The purpose of conditional certification is to determine whether the proposed collective is similarly situated, not to decide whether it has jurisdiction over non-parties to the lawsuit. Defendants generally cannot preemptively prevent a plaintiff from joining a suit due to lack of jurisdiction. Accordingly, courts frequently reject challenges to conditional certification based on the court's jurisdiction over the claims of potential plaintiffs as premature. *See, e.g., Parker v. IAS Logistics DFW, LLC*, 2021 WL 170788, at *3 (N.D. Ill. Jan. 19, 2021); *Iannotti v. Wood Grp. Mustang*, 2021 WL 2805812, at *5 (S.D. Ill. July 6, 2021); *Warren v. MBI Energy Servs., Inc.*, 2020 WL 5640617, at *2 (D. Colo. 2020); (applying *Bristol-Myers* at certification stage "puts the proverbial cart before the horse"). This approach "is especially justified where . . . it is unclear whether any out-of-state opt-ins will even join the suit." *Knecht v. C & W Facility Servs.*, 534 F. Supp. 3d 870, 876 (S.D. Ohio 2021). And if the collective is decertified at step two, the disposition of any claims brought by plaintiffs who were not harmed in Wisconsin would be straightforward: those claims would be dismissed without prejudice to refiling them as individual suits in the proper forum. So Signet may renew its *Bristol-Myers* argument at the decertification stage if it wishes.

### 3. Notice

Luna Vanegas asks the court to approve his proposed notice to the collective and his proposed consent form, which are on the docket at Dkt. 86-3. Luna Vanegas also seeks: (1) permission to issue notice by email, phone calls, and WhatsApp text message; (2) permission to use "alternative delivery services" such as mailing the notice from regional locations within Mexico or holding public meetings in towns where collective members live; (3) an order requiring Signet to post the notice in the common areas of H-2A worker housing for the duration of the opt in period; (4) a 180-day notice period by which opt-in plaintiffs must respond; and (5) an order requiring Signet to produce the names, addresses, telephone numbers, e-mail addresses, and dates of employment for each putative collective member. Signet didn't oppose Luna Vanegas's request to order Signet to produce that information about the putative collective members, so the court will grant it.

As for the notice itself, district courts have discretion to craft and facilitate the notice and other communications that a named plaintiff sends to potential plaintiffs. *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989). But "courts must be scrupulous to respect judicial neutrality and to avoid even the appearance of judicial endorsement of the merits of the action." *Jimenez v. GLK Foods LLC*, 2013 WL 3936928, at *4 (E.D. Wis. July 30, 2013) (internal quotation marks omitted.") Signet objects to the text of the proposed notice, to Luna Vanegas's proposed methods of distribution, and to the requested 180-day notice period.[2]

---

[2] Signet requests to have an opportunity to submit supplemental briefing on the issue of notice and states that it "reserves the right to further object" in the event the court grants conditional certification. Dkt. 96, at 26–27. Signet already had the opportunity to raise objections to Luna Vanegas's proposed notice in its brief. If Signet had additional objections, it should have raised them in its opposition brief. Any additional objections are forfeited.

### a.  Text of the notice

Courts should refrain from altering an FLSA plaintiff's proposed notice unless the alteration is necessary to ensure that the notice is fair and accurate. *Heitmann v. City of Chicago*, 2004 WL 1718420, at *3 (N.D. Ill. July 30, 2004). Here, Luna Vanegas's notice and consent form must be altered to reflect the definition of the collective that the court has conditionally certified: all H-2A workers who worked on agricultural construction projects for Signet at any time on or after January 2019, as well as all hourly-paid, non-managerial U.S. workers who provided manual labor on agricultural construction projects for Signet.

Signet takes issue with three elements of the notice. First, Signet objects to the section titled "What are my choices?" That section informs recipients that they have the right to join the lawsuit if they believe they worked more than 40 hours in any work week while working for one of the Signet defendants, and that they have the right not to join the lawsuit if they do not want to or if they want to file their own lawsuit. Dkt. 86-3, at 3. Signet contends that the notice is redundant because the notice already explains how putative opt-ins may join the lawsuit. But it is useful to have language expressly informing putative opt-ins that they may choose to not join the lawsuit if they wish. Signet also contends that the section is confusing because it does not expressly limit eligibility to employees who performed agricultural construction work. Luna Vanegas does not object to adding "on farms" between the words "while working" and "for one or more of the Signet Defendants." That is an appropriate change, so Luna Vanegas's notice should be amended accordingly.

Second, Signet contends that the notice fails to inform potential plaintiffs of "the realities of litigation," including that they may be required to testify and that costs may be assessed against them if Signet prevails. "Parading a list of unpleasant consequences may chill

otherwise legitimate interest in joining this collective action." *Campeau v. Neuroscience, Inc.*, 86 F. Supp. 3d 912, 920 (W.D. Wis. 2015). Luna Vanegas's attorney will be responsible for informing all opt-in plaintiffs of the potential consequences of joining this suit, and Signet's objection does not require altering the notice.

Third, Signet objects to informing recipients that they are eligible to opt in if they worked for Signet "at any time after January 2019" because the FLSA's statute of limitations is only two years, not four. This argument is premature. Luna Vanegas has alleged a willful violation, which justifies providing notice to the putative collective on the basis of the potentially applicable three-year period. *See, e.g., Ivery*, 280 F. Supp. 3d at 1135; *Sylvester v. Wintrust Fin. Corp.*, 2013 WL 5433593, at *5 (N.D. Ill. Sep. 30, 2013). And Luna Vanegas contends that potential opt-ins are entitled to equitable tolling for the one year and 69 days that the case was on appeal. So it is plausible that employees who have not worked for Signet since January 2019 still have claims that fall within the statute of limitations. *Cf. Werner v. Waterstone Mortg. Corp.*, No. 17-cv-608-jdp, 2018 WL 813525, at *2 (W.D. Wis. Feb. 9, 2018) (refusing to approve notice to individuals "with no plausible basis for asserting that they have timely claims.") Issues related to the statute of limitations will be resolved at the decertification stage, at summary judgment, or at trial.

### b. Distributing the notice

Signet objects to Luna Vanegas's proposed methods of distributing notice. It contends that Luna Vanegas should be permitted to send notice only once and only via U.S. Mail. Luna Vanegas doesn't respond to Signet's arguments about to the number of notices that should be sent to each potential plaintiff. As for Signet's arguments about which distribution method to use, Luna Vanegas responds only to Signet's objections to the use of text messaging. He argues

that it is appropriate to send text messages because (1) mail service is unreliable in Mexico; (2) many potential plaintiffs are transient; (3) Signet itself used telephone calls and text messages to contact its employees in Mexico.

The court will allow Luna Vanegas to distribute notice by email and by text message. Courts commonly approve sending notice by email in FLSA cases. *Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 880 (N.D. Ill. 2017) (collecting cases). Decisions approving notice by text message are somewhat rarer. But courts have allowed plaintiffs to disseminate notice through text message when the potential plaintiffs are transient, *see Campbell v. Marshall Int'l, LLC*, 623 F. Supp. 3d 927, 935 (N.D. Ill. 2022); the plaintiffs live in locations without reliable mail service, *see Balderas-Guevara v. Mity Mole, Inc.*, 2010 WL 472384, at *1 (M.D. Fla. Feb. 5, 2010); and text messaging was the primary method an employer used to keep in touch with the potential plaintiffs, *see Rosebar v. CSWS, LLC,* 2020 WL 43015, at *3 (N.D. Ill. Jan. 3, 2020). Luna Vanegas has adduced evidence that those circumstances are present here. Providing notice through text message is likely to be a viable and efficient means of communicating with this population of potential plaintiffs. Issuing notice through both email and text message will increase the probability that potential plaintiffs will learn about the lawsuit, but it is not enough to be bothersome or to give the appearance that the court endorses joining the suit.

### c.  Opt-in period

Luna Vanegas asks for a six-month opt-in period because the potential plaintiffs are transient and live abroad. In some other cases involving migrant workers, courts have allowed five- and six-month opt-in periods on those grounds. *See, e.g., Cardenas v. A.J. Piedimonte Agric. Dev., LLC*, 2018 WL 6177271, at *6 (W.D.N.Y. Nov. 26, 2018). Allowing Luna Vanegas to

provide notice by email and text message mitigates some of those concerns. Those methods transmit notice instantaneously and directly to the recipient. Potential plaintiffs will be able to receive those messages even if they are frequently traveling. But some additional time may be necessary to obtain accurate contact information for potential plaintiffs who reside abroad and may not have worked in the U.S. for several years. With that in mind, the court concludes that a 90-day notice period is appropriate. *See Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 784 (C.D. Ill. 2015) ("Courts routinely approve a 90-day opt-in period").

ORDER

IT IS ORDERED that:

1.  Plaintiff Jose Luna Vanegas's motion to amend the complaint, Dkt. 92, is GRANTED.

2.  Plaintiff's renewed motion for conditional certification of an FLSA collective, Dkt. 83, is GRANTED in the manner described in this opinion.

3.  The court conditionally certifies an FLSA collective with the following definition:

    > All H-2A workers who worked on agricultural construction projects for Signet Builders, Inc., Signet Construction, LLC, Signet Construction, Inc. and/or Northridge Construction, Inc. at any time on or after January 2019, as well as all hourly-paid, non-managerial U.S. workers who provided manual labor on agricultural construction projects for those companies at any time on or after January 2019.

4.  Plaintiff is directed to amend the proposed collective notice and consent form, Dkt. 86-3, as discussed above. Plaintiffs must submit final versions to the court by August 16, 2023.

5.  Defendants may have until August 23, 2023, to submit to plaintiffs a list of the names, addresses, telephone numbers, e-mail addresses, and dates of employment for each putative collective member. Plaintiffs must send notice by email and text message within one week of receiving the list.

6.  Plaintiffs' motion to certify a state-law class action under Federal Rule of Civil Procedure 23 is due February 16, 2024.

Entered August 2, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge