IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSE AGEO LUNA VANEGAS,
on behalf of himself and all others similarly situated,

                Plaintiff,                    OPINION and ORDER

   v.

SIGNET BUILDERS, INC.,                         21-cv-54-jdp

                Defendant.

---

This collective action under Fair Labor Standards Act already has a complicated procedural history, most of which the court can skip. The issue of the day concerns whether the principles of personal jurisdiction set out in *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017), for state-law mass torts should be extended to FLSA collective actions.

Plaintiff Luna Vanegas seeks to represent a collective of mostly non-U.S. citizens who worked under H-2A guestworker visas for defendant Signet Builders, Inc., a citizen of Texas. The proposed collective has about 30 potential members who worked in Wisconsin and almost 600 who did their work in other states. Vanegas did his work in Wisconsin, so the court has specific jurisdiction over Signet for the claims of Vanegas, the only named plaintiff. The court conditionally certified the proposed collective, which would allow plaintiff's counsel to send notice to all the potential members of the collective and open discovery. Dkt. 107. In the certification decision, the court declined to decide the *Bristol-Myers Squibb* jurisdictional issue: whether the court could exercise personal jurisdiction over Signet to decide the claims of workers with no connection to Wisconsin. That jurisdictional issue, so the court thought at the time, should wait for another day, after the court saw how many out-of-state members opted in.

But Signet is not content to wait, and it has filed a motion pressing the jurisdictional issue. Dkt. 110. Signet asks the court to certify two issues to the court of appeals. First, in an FLSA collective action, is it proper to defer the personal jurisdiction inquiry until after notice to the collective? Second, for a defendant not subject to general jurisdiction, must the district court establish specific personal jurisdiction over each of the claims of the out-of-state opt-in collective members?

Signet has convinced the court of the importance of the issue. So the court will decide the issue (though not in Signet's favor), certify the questions to the court of appeals, and stay the case pending the outcome of the certification.

## ANALYSIS

### A. Timing

Generally district courts have "wide discretion to manage collective actions." *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010); *see also*, *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). District courts in this circuit use a two-step process for certifying collectives, applying a relatively lenient standard at conditional certification followed by a more stringent analysis once the opt-in process is complete. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008). This approach might well result in some putative collective members receiving notice and opting in only to be deemed ineligible if the court decertifies the collective. *See, e.g.*, *Espenscheid v. DirectSat USA, LLC*, No. 09-CV-625-BBC, 2011 WL 2009967, at *7 (W.D. Wis. May 23, 2011) (decertifying a hybrid class and collective action "on the eve of trial" because class members and opt-in plaintiffs were not similarly situated).

The two-step process is common and often efficient, but it has a downside. The Seventh Circuit has acknowledged that adding additional plaintiffs increases settlement pressure and it has cautioned that district courts do not have completely free reign to authorize notice to a potentially overbroad conditional collective. *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049–50 (7th Cir. 2020) (concluding that district courts have an obligation to allow the parties to submit evidence about the proper scope of notice and not authorize notice to demonstrably ineligible individuals).

Signet argues that in this case, sending notice to a nationwide collective would unfairly expand the scope of the litigation, give plaintiff's counsel undue leverage, and potentially force an unreasonable settlement. Dkt. 120 at 3. Signet points specifically to the disparity between the small number of Wisconsin workers, about 30, and the comparatively huge number of out-of-state workers, almost 600. Dkt. 110 at 6. The court is persuaded that in this case the ardors of aggregate litigation are sufficiently burdensome that it would be unfair to proceed without deciding whether the court could, ultimately, exercise jurisdiction over the claims of out-of-state opt-in members.

**B. The merits**

The personal jurisdiction question arises from the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017). That case involved a California state-law mass tort action against Bristol-Myers Squibb, over which the court did not have general jurisdiction. *Id.* at 260. The claims in the mass tort action included hundreds that involved injuries incurred out-of-state and that did not involve any contact with California by Bristol-Myers Squibb. *Id.* at 264–65. The Supreme Court held that because the California state court could not exercise general jurisdiction over Bristol-Myers Squibb, it would have to have specific

3

jurisdiction over each claim in the mass tort action. *Id.* at 265. That precluded the state court from exercising jurisdiction over claims that arose in states other than California, because specific jurisdiction applies only to claims that relate to the defendant's contacts with the forum. *Id.* The bottom line was that the California mass tort action was simply the aggregation of many individual claims, and the court had to have a basis for personal jurisdiction over each individual claim. The Supreme Court reasoned that that case called only for the application of well-established jurisdictional principles. *Id.* at 268. But the decision has resulted in some confusion about the application of those jurisdictional principles to forms of aggregate litigation.

The circuits are split on the application of *Bristol-Myers Squibb* to FLSA collective actions. The Third, Sixth, and Eighth Circuits have concluded that courts must treat opt-in plaintiffs in FLSA collective actions like the mass-tort plaintiffs in *Bristol-Myers Squibb*. See *Canaday v. Anthem Cos.*, 9 F.4th 392 (6th Cir. 2021); *Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861 (8th Cir. 2021). These courts reasoned that Federal Rule of Civil Procedure 4(k)(1) requires courts to conduct a separate personal jurisdiction analysis under the Fourteenth Amendment Due Process Clause for each plaintiff that opts into an FLSA action. *Canaday*, 9 F.4th at 399; *Vallone*, 9 F.4th at 865; *Fischer*, 42 F.4th at 382–83. In the view of these three courts, the FLSA opt-in is, by virtue of opting in, an active plaintiff like any other. In contrast, the First Circuit reasoned that Rule 4(k) provides only a limit on effective service of the summons, not an independent limit on jurisdiction once a summons has been served. *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 94 (1st Cir. 2022). The First Circuit concluded that only the named plaintiffs' FLSA claims need to arise from the defendants' contacts with the forum state, because once a defendant is

4

properly served, the Fifth Amendment's Due Process Clause controls the personal jurisdiction analysis. *Id.* at 96.

The Seventh Circuit has not directly addressed whether the *Bristol-Myers Squibb* jurisdictional approach applies to FLSA collective actions. But it has ruled that *Bristol-Myers Squibb* does not apply to federal class actions. *Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020). The court of appeals held that a district court need not secure personal jurisdiction over the claims of the absent members of a nationwide class; the required jurisdictional analysis applies only to the named plaintiffs.

For three reasons, the court concludes that the First Circuit's decision in *Waters* is consistent with the Seventh Circuit's approach to personal jurisdiction in aggregate litigation. First, the Seventh Circuit has repeatedly stressed the similarities between class actions under Rule 23 and FLSA collective actions, and it applies the same standards to both. *See Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012) (explaining that courts treat collective actions "as the equivalent of class actions—and thus for example do not require motions to intervene and do require certification . . . except that in a collective action unnamed plaintiffs need to opt in to be bound, rather than, as in a class action, opt out not to be bound."); *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("Indeed, despite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23 . . . there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards"); *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 (7th Cir. 2018) (applying

5

the same analysis to question of the availability of collective arbitration as that used for class arbitration).

From the perspective of this district court, the Seventh Circuit's approach to FLSA collective actions reflects the reality of collective action litigation. Generally, in FLSA collective litigation, contact between plaintiffs' counsel and the members of the collective is limited to the receipt of the opt-in consent forms. The opt-in members do not actively participate in, let alone control, the litigation. The opt-ins are for nearly all purposes absent parties whose interests the court must step in to protect, just as the court must consider and protect the interests of the unnamed Rule 23 class members who will be bound by a settlement in which they did not participate.

Second, the Seventh Circuit's consideration of Rule 4(k) in *Mussat* aligns with the First Circuit's reasoning in *Waters*. In the view of the First Circuit, the Sixth and Eighth Circuits "rely on an erroneous reading of Rule 4, and fail to successfully confront the fact that Rule 4(k) is a 'territorial limit' on 'effective service' of a summons, and thus logically cannot be read to limit a federal court's jurisdiction after a summons is properly served." *Waters*, 23 F.4th at 97. In *Mussat*, the Seventh Circuit followed similar reasoning: "Rule 4(k) addresses *how* and *where* to serve process; it does not specify *on whom* process must be served." 953 F.3d at 448.

Third, the approach of the Third, Sixth, and Eighth Circuits would have the practical effect of forcing plaintiffs to file any multi-state FLSA collective action in the defendant employer's home forum. If Congress or the Supreme Court had intended to so limit the venue of FLSA collective actions, one would have expected a clear statement to that effect. This seems to be a dramatic change from historical practice to wring from a close reading of Rule 4 concerning service of process.

The court concludes that the jurisdictional principles in *Bristol-Myers Squibb* do not apply in FLSA collective actions. The court concludes that it has specific jurisdiction over Signet because the claims of Luna Vanegas, the sole named plaintiff, arise from Signet's contacts with Wisconsin. The court need not separately consider personal jurisdiction over the claims of the potential out-of-state opt-in plaintiffs.

## C. Interlocutory appeal

Under 28 U.S.C. § 1292(b) a district court may certify an order for interlocutory review if the order (1) involves a question of law, (2) is controlling, (3) is contestable, and (4) its resolution will materially advance the ultimate termination of the litigation. Whether *Bristol-Myers Squibb* applies to FLSA collective actions is a pure question of law that can be decided on appeal without a study of the factual record. The question is controlling because it will dramatically affect the future scope of the litigation. The circuit split on the question shows that it is contestable. Finally, as a practical matter, immediate appeal will materially advance the ultimate resolution of this litigation by resolving uncertainly about the proper scope of the collective as it proceeds to the opt-in period, discovery, and summary judgment.

To be clear, conditional certification does not automatically present an appropriate question for interlocutory appeal, even though the two-step process may create a risk that ineligible workers will opt into a collective action. *See, e.g., In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *2 (7th Cir. Sept. 1, 2021) ("Further, conditional certification and authorization of notice to others who may be similarly situated is a preliminary, non-final step that does not adjudicate any party's rights."). But the *Bristol-Myers Squibb* question presents a circumstance where an immediate appeal of a pure question of law promises to efficiently advance the litigation, as other courts have recognized. *See Canaday*, 9 F.4th 392

(deciding *Bristol-Myers Squibb* applies to FLSA collective actions on interlocutory appeal from district court decision on a motion to dismiss); *Waters*, 23 F.4th 84 (same); *Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022) (deciding *Bristol-Myers Squibb* question on interlocutory appeal from decision granting conditional certification for a collective limited to in-state workers). And this case provides an appropriate factual context for interlocutory review of this issue, because out-of-state potential members outnumber Wisconsin members by 20 to one. The court will amend its August 2, 2023, order to decide the jurisdictional issue and to certify the decision for interlocutory review.

The final issue in Signet's motion is whether the court should stay the proceedings until the Seventh Circuit decides Signet's petition for interlocutory review. Whether to grant a stay is within the court's discretion. Courts consider the usual factors: (1) the likelihood of success on the merits, (2) whether irreparable injury will result without a stay, (3) whether the stay will substantially injure the other party, and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). These factors counsel in favor of a stay in this circumstance, where the reason for certification of interlocutory appeal is to clarify the proper scope of the collective before Luna Vanegas distributes notice to a nationwide collective. Luna Vanegas raises the legitimate concern that a stay will injure plaintiffs if the statute of limitations runs pending the appeal. Signet responds that it does not oppose tolling the statute of limitations for putative collective members during the pendency of the interlocutory appeal. So, to ameliorate potential harm to the plaintiffs, the court will toll the statute of limitations for putative collective members during the pendency of the interlocutory appeal.

ORDER

IT IS ORDERED that:

1. The order dated August 2, 2023, Dkt. 107, is AMENDED to decide that this court has personal jurisdiction over the nationwide FLSA collective action and to certify that decision for interlocutory review under 28 U.S.C. § 1292.

2. The case is STAYED pending the Seventh Circuit resolution of Signet's interlocutory appeal.

3. The statute of limitations for members of the putative collective defined in the court's August 2, 2023 order, Dkt. 107, is tolled pending the Seventh Circuit resolution of Signet's interlocutory appeal.

Entered    September 1   , 2023.

                                              BY THE COURT:

                                              /s/
                                              JAMES D. PETERSON
                                              District Judge