

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-2964

JOSE AGEO LUNA VANEGAS,

*Plaintiff-Appellee,*

*v.*

SIGNET BUILDERS, INC.,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:21-cv-00054-jdp — **James D. Peterson**, *Chief Judge.*

———————————

ARGUED MARCH 29, 2024 — DECIDED AUGUST 16, 2024

———————————

Before ROVNER, ST. EVE, and PRYOR, *Circuit Judges.*

ST. EVE, *Circuit Judge.* This case presents two questions. First, do Fair Labor Standards Act collective actions, like Rule 23 class actions, require personal jurisdiction only over their representative plaintiffs? Second, and if not, does Federal Rule of Civil Procedure 4 furnish a backdoor way to exercise nationwide personal jurisdiction in FLSA cases? We answer both in the negative. A court overseeing a collective action

must secure personal jurisdiction over each plaintiff's claim, whether representative or opt-in, individually.

## I. Background

This is a successive appeal; factual details appear in *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636 (7th Cir. 2022).

To briefly recap, the defendant here, Signet Builders, Inc., is both incorporated and headquartered in Texas. Its construction business, though, spans the nation. Signet largely hires holders of H-2A guestworker visas. These visas allow Signet to hire guestworkers for "agricultural" work. *Id.* at 639. Jose Ageo Luna Vanegas—the plaintiff—is one of those guestworkers. Working for Signet, he built structures to house livestock in three states, including Wisconsin.

Luna Vanegas alleges Signet overworked and underpaid him. *Id.* Under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, an employer generally must pay its employees time-and-a-half for hours worked past the first 40 per week. *See* 29 U.S.C. § 207(a). Exceptions apply. One carves out "any employee employed in agriculture." *Id.* § 213(b)(12). Because the H-2A visa requires guestworkers to work in the "agricultural" sector, Signet long considered them exempt from the FLSA (and so denied them overtime pay).

Unhappy with the policy, Luna Vanegas sued Signet in the Western District of Wisconsin. He brought a collective action, as the FLSA permits. *Id.* § 216(b). Then he served a summons on Signet at its Austin, Texas, office under Rule 4. Signet moved to dismiss, invoking the FLSA's agriculture exception, and the district court granted the motion. We reversed that decision. *See Luna Vanegas*, 46 F.4th at 646.

Still pursuing this case as a collective action—the FLSA's mechanism for aggregating workers' claims into one suit—Luna Vanegas moved for conditional certification; he sought, in other words, to establish that other Signet workers "should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). The court granted his motion, giving the green light to notify others about the pending FLSA suit and ask whether they might like to join.

The next round of litigation (to which this appeal belongs) seeks to define the scope of that notice. While Luna Vanegas pushed for nationwide distribution, Signet wanted to limit notice to those who had worked in Wisconsin. It reasoned that the Wisconsin court had only specific jurisdiction over Signet, meaning it could adjudicate only claims from laborers who had worked in Wisconsin. Deferring decision on that point, the district court opted to order broad notice straightaway and planned to sort out jurisdictional questions later.

Ultimately the district court certified the question whether the court must have specific jurisdiction over the claim of each opt-in plaintiff in an FLSA collective action. In doing so, it sided with Luna Vanegas, holding there is no such requirement. We accepted the interlocutory appeal under 28 U.S.C. § 1292(b) and now reverse.

## II. Analysis

Absent a party's consent to personal jurisdiction, *see Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023), a court must secure either general or specific jurisdiction. General jurisdiction over a defendant permits a court to adjudicate any claim against it but exists only where a defendant is "essentially at

home" because its contacts with a given state are "continuous and systematic," as when a business is headquartered or incorporated in that state. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011). By contrast, specific jurisdiction lets a court decide only claims relating to a "defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Specific jurisdiction covers adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (citations omitted).

The Supreme Court has disapproved exercises of specific jurisdiction that "resemble[] loose and spurious form[s] of general jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017) ("*BMS*"). Luna Vanegas offers up two theories that seek to explain how a district court can exercise specific jurisdiction over a case involving a nationwide collective. But both share a fatal flaw. In stretching specific jurisdiction so far, Luna Vanegas would distend it into a "loose and spurious form of general jurisdiction." *Id.* We cannot agree with that result.

## A. *Bristol-Myers Squibb* Requires Claim-Specific Analysis

Two key cases assessing personal jurisdiction in other forms of aggregate litigation help frame the issue here. One addresses a California procedure called a mass action; the other deals with Rule 23 class actions. We conclude this case is more like a mass action.

First came the Supreme Court's *Bristol-Myers Squibb* opinion. There, 86 California residents and 592 others sued in California's state courts relating to injuries they attributed to a prescription blood thinner. These claims proceeded together

under § 404 of California's Civil Procedure Code, which consolidates claims into one suit—a "mass action." The claims, though, remain "individual cases, brought by individual plaintiffs." *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 446 (7th Cir. 2020).

In adjudicating mass actions, the California courts had taken a "sliding scale approach to specific jurisdiction" that accounted for the defendant's contacts with California even for out-of-state claims. *BMS*, 582 U.S. at 260 (cleaned up). That would not do. The *BMS* Court derided this approach as "difficult to square with [its] precedents," adding that it "resembles a loose and spurious form of general jurisdiction." *Id.* at 264. It held that for personal jurisdiction, it is not enough that a court has personal jurisdiction over *some* of those individualized claims in the mass action. The Fourteenth Amendment's due process guarantee sets a higher bar. Instead, the Court stressed, each claim must stand alone. "What is needed … is a connection between the forum and the specific claims at issue." *Id.* at 265.

Second is our opinion in *Mussat*, 953 F.3d at 448–49, where we distinguished class actions from *BMS*-style mass actions, marking class actions as an exception to *BMS*'s rule. That holding relied on key features of Rule 23 class actions that protect absentee plaintiffs and facilitate representative litigation: "the lead plaintiffs earn the right to represent the interests of absent class members," *id.* at 447, which entails "a rigorous analysis" to confirm the named plaintiffs will well represent the absentees. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (cleaned up). In direct terms, Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.

23(a)(4). Not so for mass actions, with their "individual cases, brought by individual plaintiffs." *Mussat*, 953 F.3d at 446.

Such "[p]rocedural formalities matter," as we put it then. *Id.* Because of those procedural formalities in Rule 23, "the class as a whole is the litigating entity." *Id.* at 445. Or in other words, the class "acquires an independent legal status." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). That means "[t]he absent class members are not full parties to the case for many purposes," including personal jurisdiction. *Mussat*, 953 F.3d at 447. This lack of party status is why "the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." *Id.* A "district court need not have personal jurisdiction over the claims of absent class members at all," *id.* at 448, because they are not parties for this purpose.

"Class actions, in short, are different from many other types of aggregate litigation, and that difference matters in numerous ways for the unnamed members of the class." *Id.* at 446–47. Other circuits have agreed that Rule 23's unique features call for this kind of representative-focused inquiry into jurisdiction. *See, e.g.*, *Lyngaas v. Curaden Ag*, 992 F.3d 412, 435 (6th Cir. 2021) ("[A] class action is formally one suit."); *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 375 (3d Cir. 2022) ("[I]n a class action, the relevant claim is the claim of the class.").

Because we find that an FLSA collective action tracks with a mass action—and is quite unlike a class action—we reach the same result as the Court did in *BMS*. Or stated differently, we hold that *BMS* requires a claim-by-claim personal jurisdiction analysis in the FLSA context. In so holding we join three of our sister circuits. *See Canaday v. Anthem Cos., Inc.*, 9 F.4th

392 (6th Cir. 2021) (applying *BMS*'s rule to collective actions); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861 (8th Cir. 2021) (same); *Fischer*, 42 F.4th 366 (same); *but see Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 93 (1st Cir. 2022) (declining to do so). Their example helps confirm our conclusion's faithful adherence to *BMS*.

We start, though, with the text that creates the FLSA collective action, which sheds light on its structural parallels with the mass action. Specifically, 29 U.S.C. § 216(b) provides:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Notably, the statute calls the prospective opt-ins "party plaintiff[s]." *Mussat* vests that label with importance: we held that *BMS* does not extend to class actions only because of the absentee plaintiffs' nonparty status under Rule 23. Section 216(b), by contrast, confers on opt-in plaintiffs the rights and duties of parties. *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1807 (3d ed. 2005) ("[E]very plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class actions do not."). That includes the duty to show personal jurisdiction; just as in *BMS*, "all of the plaintiffs are named parties to the case" here. *Mussat*, 953 F.3d at 447.

Consider, too, what § 216(b) omits. Nothing in the statute ensures adequate representation. Once an employee "gives his consent in writing" and files it with the court, his interest merges into the suit—quite unlike the Rule 23 process, where "lead plaintiffs earn the right to represent the interests of absent class members by satisfying all four criteria of Rule 23(a) and one branch of Rule 23(b)." *Id.* "Section 216(b) has nothing comparable to Rule 23(b)(3)'s requirements of predominance or superiority," *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 519 (2d Cir. 2020). The "two provisions 'bear little resemblance to each other,'" *Fischer*, 42 F.4th at 376 (quoting *Scott*, 954 F.3d at 519), which is why courts must establish jurisdiction over each FLSA plaintiff's claim, whether "representative" or opt-in, but not each class member's.

The statute's history is not our starting point—the text holds that place—but it further confirms that FLSA collectives work differently from class actions. "In response to excessive representative litigation, Congress added the opt-in provision to the FLSA in 1947." *Canaday*, 9 F.4th at 402. When the first FLSA suits were brought in the late 1930s and early 1940s, they often *were* representative, and plaintiffs not wishing the judgment to bind them had to opt out. In those days, the statute "gave employees and their 'representatives' the right to bring actions to recover amounts due under the FLSA." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). The Portal-to-Portal Act of 1947 effected that change, essentially giving plaintiffs in representative actions 120 days to become party plaintiffs or find their claims time-barred. *See* Portal-to-Portal Act of 1947, ch. 52, § 8 (applying statute of limitations "to an individual claimant who has not been specifically named as a party plaintiff to the action prior to the expiration

of one hundred and twenty days" from the Act's effective date).

The whole idea was "limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). Setting out to curtail representative suits, Congress chose to "create a system of 'permissive joinder' rather than creating 'so-called class actions.'" *Fischer*, 42 F.4th at 379 (quoting *Fink v. Oliver Iron Mining Co.*, 65 F. Supp. 316, 318 (D. Minn. 1941)). To ensure FLSA plaintiffs were real parties in interest, Congress made them real *parties*.

The dissent quibbles with this statutory history, positing for instance that the Portal-to-Portal Act's true purpose was to "eliminate the possibility of 'one-way intervention.'" That might be. But even if so, that only bolsters our holding; the way Congress chose to cut out the possibility of plaintiffs jumping on board after a favorable judgment was to make them true parties the moment they join the case.

What is more, in practice courts treat FLSA collectives as agglomerations of individual claims. For one thing, "each FLSA claimant has the right to be present in court to advance his or her own claim." Wright & Miller § 1807. Further, the statute of limitations on opt-in plaintiffs' claims enjoys tolling only after the plaintiff files her consent, which goes to show the focus on a plaintiff's own management of her claim. *See Mickles v. Country Club, Inc.*, 887 F.3d 1270, 1281 (11th Cir. 2018). Rule 23 class actions work the opposite way: "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). Finally, "there

are no anonymous plaintiffs" in a collective action. *Anderson v. Montgomery Ward & Co., Inc.*, 852 F.2d 1008, 1016 (7th Cir. 1988). From filing to judgment, "collective actions permit individualized claims and individualized defenses." *Canaday*, 9 F.4th at 403. Luna Vanegas invites us to make personal jurisdiction the exception. With respect, we decline.

In short: FLSA collective actions are unlike class actions. Just like the mass action in *BMS*, a collective action is no more than a "consolidation of individual cases, brought by individual plaintiffs." *Mussat*, 953 F.3d at 446. That individual character extends to personal jurisdiction.

Any counterarguments are unavailing.

For one, Luna Vanegas stresses certain similarities between class and collective actions. We have said, for example, that "there isn't a good reason to have different standards for the certification of the two different types of action." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). Other times we have called the collective action "a genuine representative action." *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982).

In rejecting this argument, we heed the Supreme Court's comment that "significant differences" separate class from collective actions. *Genesis Healthcare*, 569 U.S. at 70 n.1. Indeed, in that same case the Court reasoned that "Rule 23 actions are fundamentally different from collective actions under the FLSA" in rejecting a proposed extension of class action caselaw to cover collective actions. *Id.* at 74. With those admonitions in mind, we cannot put the same load-bearing weight on *Espenscheid* and *Woods* that Luna Vanegas assigns them. Even so, we need not disturb those holdings—the Court

itself did "not express an opinion" on the use of Rule 23 standards to guide conditional certification decisions. *Id.* at 70 n.1.

Next Luna Vanegas posits that *BMS* applies only in state court. Not so. True, the Court did cabin its holding to "the due process limits on the exercise of specific jurisdiction by a State," leaving "open" the issue "whether the Fifth Amendment imposes the same restrictions." *BMS*, 582 U.S. at 269.

But Luna Vanegas cannot slip through that opening. While the Fifth Amendment does constrain federal courts' jurisdiction, in this case the Fourteenth Amendment operates to restrict jurisdiction further. After all, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons," *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014), because federal courts ordinarily secure their jurisdiction through Federal Rule of Civil Procedure 4(k)(1)(A), which in turn pulls in state law limits on jurisdiction. *See Canaday*, 9 F.4th at 399. For reasons that follow below, this case is no outlier. The Fourteenth Amendment, not the Fifth, does all the jurisdictional work in this case. So *BMS* does apply, by operation of the Fourteenth Amendment.

This conclusion also answers the dissent's contention that the *BMS* Court "expressly excepted from its holding exercises of personal jurisdiction made by federal courts under the Fifth Amendment." We do just the same today. Or put just a bit differently: we hold, as *BMS* did, that the Fourteenth Amendment imposes those restrictions—adding only that through Rule 4(k)(1)(A), they apply to the district court too.

The dissent notes that the Court characterized its *BMS* holding as a "straightforward application ... of settled principles of personal jurisdiction." *Id.* at 268. Well-settled though

the principles may be, *BMS*'s application led many courts to reexamine personal jurisdiction's role in complex litigation. *Mussat* and its cousins, and FLSA cases like this one, are part of that reexamination process, which started in the last decade. The dissent's reference to eighty years of FLSA history implies we should craft jurisdictional rules to prop up existing practices in labor law. But it is the time period since the Supreme Court spoke in *BMS*—and not the preceding seventy years—that most bears on our decision.

In like vein, the dissent seeks to distinguish *BMS* on the ground that its "procedural mechanism permitted the re-dispersal of the individual suits after the common questions were resolved." It insists that the FLSA works differently, so that "the claims of all plaintiffs who have opted in are resolved together." Yet, we have held, the "district court has wide discretion to manage collective actions." *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010). That includes the authority to divide a collective into pieces and adopt "a subclaim approach" to handle those pieces separately. *Id.*

Last, Luna Vanegas entreats us to consider the possibility of "pendent" personal jurisdiction over claims by opt-in plaintiffs. "The idea comes in two forms—pendent claim and pendent party personal jurisdiction." *Canaday*, 9 F.4th at 401. The former doctrine permits courts asserting personal jurisdiction over one claim to extend that jurisdiction to another related claim by the same plaintiff. The latter is similar, except the two claims come from two different parties.

We have recognized pendent claim personal jurisdiction just once before, in *Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445 (7th Cir. 2000). When we did so, we reasoned that "federal claims" in the case "provided for

extraterritorial service"—there, "claims under the Securities
Act and the Securities Exchange Act." *Id.* at 449. Those nation-
wide service provisions are a key ingredient for this doctrine.
*See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir.
1997) (permitting pendent personal jurisdiction only "[w]here
… Congress has authorized nationwide service of process"
(cleaned up)). No such claim exists in this case, so even pen-
dent claim personal jurisdiction is unavailable here.

Yet Luna Vanegas asks us to push the doctrine still further,
to endorse pendent party personal jurisdiction. This we have
*never* done; indeed, we are aware of no circuit court to adopt
the theory. And without even one "anchor" claim endowed
with extraterritorial service, this case cannot be the first.

Even if we look past that defect to view the issue more
generally, we find pendent party personal jurisdiction "hard
to reconcile with *Bristol-Myers*." *Canaday*, 9 F.4th at 401. It rec-
reates the same "loose and spurious form of general jurisdic-
tion" decried in *BMS*, 582 U.S. at 264. "No less importantly,
no federal statute or rule authorizes pendent claim or pendent
party personal jurisdiction." *Canaday*, 9 F.4th at 401–02. Even
the very broadest theories of personal jurisdiction recognize
Congress's primacy in defining its bounds, opining that
"Congress can extend the federal courts' personal jurisdiction
as far as it wants." Stephen E. Sachs, *The Unlimited Jurisdiction
of the Federal Courts*, 106 Va. L. Rev. 1703, 1729 (2020). Congress
may possess such broad power, but we surely do not.

*        *        *

The district court's personal jurisdiction reaches only
those claims that Wisconsin's specific jurisdiction embraces.
The bulk of these will, like Luna Vanegas's, involve work

performed in Wisconsin—though we leave it to the district court to decide if others fit the bill.

## B. Rule 4 Does Not Undermine the *BMS* Holding

Our *BMS* analysis depends on a foundational precept: that the Fourteenth Amendment does in fact limit the district court's personal jurisdiction over opt-in claims. Luna Vanegas challenges that precept, but he is mistaken.

He starts with a correct observation: the Constitution permits federal courts to exercise personal jurisdiction subject only to Fifth Amendment limits. The scope of these limits is unclear. Courts taking the narrow view have imported the Fourteenth Amendment general-specific dichotomy to the Fifth Amendment, looking for contacts between the defendant and the United States as a whole. *See, e.g.*, *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 122 (3d Cir. 2020). Other jurists read the Fifth Amendment more broadly, authorizing Congress to extend jurisdiction as far as it likes. *See, e.g.*, *Lewis v. Mutond*, 62 F.4th 587, 598 (D.C. Cir. 2023) (Rao, J., concurring).

Although even the narrow view of the Fifth Amendment would allow the district court to decide any claim against Signet (a United States corporation), the Fifth Amendment is only part of the story. Other constraints limit courts' personal jurisdiction. This fact owes to a bedrock principle: "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (cleaned up). Federal Rule of Civil Procedure 4 defines this procedure, which entails giving each defendant a copy of the complaint, plus a summons from the court, to notify them of the pending suit.

Rule 4 explains that service "establishes personal jurisdiction over a defendant" only in certain situations. Two are relevant here: Rule 4(k)(1)(C) and Rule 4(k)(1)(A).

The first allows for effective service "when authorized by a federal statute." Fed. R. Civ. P. 4(k)(1)(C). Some statutes permit service nationwide. Take the Clayton Act, which provides "process … may be served … wherever [the defendant] may be found." 15 U.S.C. § 22. Other "examples of legislation expressly authorizing nation-wide service" touch areas like securities and retirement plans. *Laurel Gardens*, 948 F.3d at 119–20.

When there is no statutory authorization for effective service, Rule 4(k)(1)(A) applies. It makes service effective on a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." And so where a party perfects service under Rule 4(k)(1)(A), *federal* courts must assess the limits on *state* courts' jurisdiction to determine their own. Stated differently, a court's jurisdiction must comply with both Fifth Amendment due process and the applicable state court limitations—including those announced in *BMS*. In keeping with that mandate, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler*, 571 U.S. at 125. Service statutes conferring broad, nationwide jurisdiction are the exception, not the rule.

No exception applies here, for the FLSA enjoys no special jurisdictional reach. But Luna Vanegas still thinks the court's jurisdiction over later opt-in plaintiffs should be judged by the generous Fifth Amendment standard. He reasons that when he served Signet for his own Wisconsin suit, the court "establishe[d] personal jurisdiction." Fed. R. Civ. P. 4(k)(1). With

that out of the way, he contends, opt-in plaintiffs need only comply with the Fifth Amendment. To bolster that claim, he points out that opt-in plaintiffs need not serve a summons on the defendant. Instead, he presses, the law requires only less-rigorous Rule 5 service, which involves no summons. *See* Fed. R. Civ. P. 5(b). Outside the FLSA context, parties use Rule 5 service for such lower-stakes items as "a discovery paper required to be served on a party." Fed. R. Civ. P. 5(a)(1)(C).

Pulling all this together: Luna Vanegas argues, at bottom, that once a court establishes its personal jurisdiction under Rule 4, any new claims or parties need only comply with the Fifth Amendment—unless the addition explicitly calls for a new summons as, *e.g.*, Fed. R. Civ. P. 14(a)(1) does.

"That is not how it works." *Canaday*, 9 F.4th at 400. Rule 4(k)(1)(A), rather, "authorizes personal jurisdiction in federal court only as far as would be authorized in state court." Wright & Miller, § 1069. Or, in other words, when the court asserts its jurisdiction through Rule 4(k)(1)(A) service, all it gets is what a state court would have. "In the case of general personal jurisdiction, once the court asserts personal jurisdiction over a defendant through service of process under Rule 4(k)(1)(A), the defendant is subject to the jurisdiction of the court with regard to any and all claims that might be brought." *Fischer*, 42 F.4th at 384. On the flip side, in the case of specific personal jurisdiction, the defendant is subject to jurisdiction only for claims tied to its contacts with the state.

If it should become necessary to expand that jurisdiction, that is an occasion for new Rule 4 service. *Id.* at 386. This would not be unprecedented. *See* Wright & Miller, § 1146 ("[F]airness may require the court to order that jurisdiction be

reasserted over [a] party himself [under Rule 4] rather than rely on … Rule 5(b).").

Just as with pendent party personal jurisdiction, we find Luna Vanegas's theory "hard to reconcile with *Bristol-Myers*," *Canaday*, 9 F.4th at 401, as it would create another "loose and spurious form of general jurisdiction." *BMS*, 582 U.S. at 264. Indeed, Luna Vanegas's theory would permit later-added claims of any kind—whether under the FLSA or plain old Rule 18 joinder—to sidestep the usual jurisdictional limits.

Nor can we square that result with the outcome in *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010), where we used Rule 4(k)(1)(A) and its inherent Fourteenth Amendment analysis to find a lack of personal jurisdiction over claims added *after* the service of summons on the defendant under Rule 5. Both scholars and other courts agree that Luna Vanegas's theory is flatly inconsistent with *Tamburo*. *See* A. Benjamin Spencer, *Out of the Quandary: Personal Jurisdiction over Absent Class Member Claims Explained*, 39 Rev. Litig. 31, 43 (2019) ("[C]ourts regularly apply Rule 4(k)(1)(A) limitations to the claims appearing in amended complaints."); *Canaday*, 9 F.4th at 400.

Pushing back, Luna Vanegas points to our statements in *Mussat* that Rule 4(k) does not "establish[] an independent limitation on a federal court's exercise of personal jurisdiction." 953 F.3d at 447. But what we held in *Mussat* is that "a district court need not have personal jurisdiction over the claims of absent class members at all." *Id.* at 448. The *Mussat* defendant looked in vain for such a requirement in Rule 4(k). But a district court *does* need personal jurisdiction over each FLSA plaintiff. Rule 4(k) just defines when that obligation is met, when it does exist. Today's holding coheres with *Mussat*.

Nor does Luna Vanegas persuade us by citing Federal Rule of Civil Procedure 82, which provides that the Rules "do not extend or limit the jurisdiction of the district courts." The Supreme Court has long held "Rule 82 must be taken to refer" to "jurisdiction of the subject matter," not over the person. *Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 445 (1946).

Another argument compares Rule 5—the Rule under which new FLSA opt-ins inform defendants of their debut in the case—to Federal Rule of Civil Procedure 14(a)(1), the one for impleading a third-party defendant into the case. The latter calls for the third-party plaintiff to "serve a summons and complaint" on the new party it impleads. *Id.* Luna Vanegas notes the absence of such language in Rule 5 and concludes future opt-ins never must assert new personal jurisdiction on a defendant. That does not follow. The rule is this: a court asserting specific personal jurisdiction it previously lacked needs a summons. *Fischer*, 42 F.4th at 384 ("[I]f an additional plaintiff seeks to join the suit bringing her own claims, or if the original plaintiff seeks to add or amend claims, there is no need to serve the defendant again as long as the new claims arise out of or relate to the defendant's minimum contacts with the forum state, because the defendant would already be subject to the jurisdiction of the court with respect to those claims".). The Rule 14 scenario brings new personal jurisdiction over a new defendant, so it calls for Rule 4 service. Opt-ins need new personal jurisdiction if their claims do not arise out of or relate to the defendant's minimum contacts with the forum state. In that scenario, a summons is necessary in the appropriate forum; otherwise, the Rule 5 process does the job. *Id.*

The dissent calls this a "new rule." But as *Fischer* explained, this is just one application of existing law. 42 F.4th at 386–87. Authorities have cautioned that Rule 5 service "is invalid" when "the district court has personal jurisdiction over the defendant only because the act that forms the basis of the original claim occurred within the jurisdiction, and the plaintiff would be unable to bring an independent suit … in the same court because that claim lacks a nexus with the forum." Wright & Miller, § 1146. We adopt and apply that rule here, as the *Fischer* court did, because we agree that "Rule 5 is better seen as an alternative to Rule 4 to providing notice to an opposing party in circumstances where the court already has personal jurisdiction over the defendant with regard to the plaintiff's claims." 42 F.4th at 386.

In the same vein, Luna Vanegas observes that for substitutions under Federal Rule of Civil Procedure 25(a)(3), the new plaintiff need only serve "the parties as provided in Rule 5." But this Rule cuts against him: if the substitution would bring in a new party, that still calls for service "as provided in Rule 4," just as we hold here. *Id.*

No parade of horribles undercuts our holding. Both Luna Vanegas and the dissent call our attention to core FLSA aims, including "efficiency in the resolution of disputes, by resolving in a single action common issues arising from the same alleged illegal activity." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020). But our holding does not undermine the efficiency of FLSA suits. A nationwide collective of Signet's workers could proceed in Texas, which enjoys general jurisdiction over Signet, with no loss of efficiency.

And the dissent's concern that Signet might be forced to defend suits in several jurisdictions is misplaced. For no

No. 23-2964

matter what we decide today, the choice to concentrate the claims into one suit or disperse them across the nation rests always in plaintiffs' hands. In this way, too, the FLSA is unlike a class action. The FLSA claims will splinter into different suits if (and only if) the plaintiffs so choose. The dissent's rule would not alter that, so the specter of "thousands of mini trials" looms either way.

We close with one last point. Amici supporting Luna Vanegas charge that siding with Signet here means every opt-in plaintiff must serve a defendant under Rule 4. Not so. Any plaintiff whose claim falls within the specific jurisdiction of a Wisconsin state court may join the case under Rule 5, since the district court already wields that much jurisdiction over Signet. *Fischer*, 42 F.4th at 384. It is only if the plaintiffs wish to expand the court's jurisdiction that anyone need go back to the Rule 4 well.

### III. Conclusion

*BMS* teaches that a court must establish its jurisdiction over claims one at a time. The FLSA does not mark an exception to that rule, and neither does any loophole in Rule 4.

REVERSED AND REMANDED.

ROVNER, *Circuit Judge*, dissenting. When Congress enacted the Fair Labor Standards Act ("FLSA"), it wanted a level playing field between employers and employees. With today's holding, that level playing field is now gone, and employers have the advantage once again. I worry for the workers the FLSA was meant to protect—those who, by the very nature of their allegations, will almost certainly be unable to pursue relief on their own, and who rely on the collective action mechanism to have their rights vindicated at all. That these individuals may pursue their claims collectively either in the forum most convenient to their employer or in multiple unsynchronized suits scattered across the country is a hollow comfort. Indeed, these workers, whose claims allege that they have been undercompensated, will need to expend resources into a litigation perhaps hundreds or thousands of miles away, should they wish to proceed as a collective with opt-ins from multiple states. Yes, their rights have not been totally abolished, but they have been severely hindered for an outcome not required by statute, the Supreme Court, or personal jurisdiction jurisprudence.

Federal courts need not re-establish personal jurisdiction over opt-in FLSA collective action members. To understand why, one must begin from the beginning, with the purposes of personal jurisdiction and the FLSA.

Personal jurisdiction operates to protect states and defendants from exercises of foreign states' "coercive power." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918–19 (2011). Each state is its own sovereign, and when one state attempts to act beyond its borders, it interferes with the sovereignty of other states. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980). This is not an absolute

restriction; states may exercise their power over foreign defendants. But when a state court seeks to do so, it must first evaluate whether the defendant would be inconvenienced by "practical problems resulting from the litigation," whether the exercise complies with "traditional notions of fair play and substantial justice," and whether it has a "legitimate interest in the claims in question." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 263 (2017) ("*BMS*"); *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, (1940).. These limits restrict state courts' exercise of personal jurisdiction to protect the federalism and due process interests that an exercise of the state's coercive power can implicate.

When a federal court exercises personal jurisdiction, the equation is different because the same concerns are not implicated. Indeed, the United States is its own entity for jurisdictional purposes, with "its own direct relationship, its own privity, its own set of mutual rights and obligations to the people who sustain it and are governed by it." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011). The consequences of these differences are not merely theoretical. For example, federal courts are not cabined by state lines the way that state courts are. *See* Fed. R. Civ. P. 4(k)(1)(B) (establishing jurisdiction over a joined party served within 100 miles of the issuance of the summons). So, in both motivation and practice, personal jurisdiction does not restrict federal courts the same way that it contains state courts.

The Federal Rules of Civil Procedure tie personal jurisdiction to the service of summons, Fed. R. Civ. P. 4(k)(1), which must happen within 90 days after the complaint is filed. Fed.

R. Civ. P. 4(m). *See also* Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint."). Thus, it is up to the party filing the complaint to effectively serve the defendant and establish the federal court's personal jurisdiction.

With the principles of personal jurisdiction established, we turn to the FLSA. Here, background will contextualize the statute's principles and mechanisms. In 1938, Congress passed the FLSA to protect workers. Its purpose was simple: to protect workers from unfair employer practices, like failing to properly compensate workers for overtime work (i.e., work done in excess of 40 hours per week). 29 U.S.C. §§ 202, 207(a). Congress saw these failures as national in scope, spreading their nefarious effects and labor conditions "among the workers of the several States." *Id.* at § 202(a). Originally, the statute allowed suits by employees "for and in behalf of himself or themselves and other employees similarly situated" or, in the alternative, an "agent or representative" could bring suit on behalf of affected employees. *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 254 (3d Cir. 2012) (quoting Fair Labor Standards Act of 1938, ch. 676, 52 Stat. 1060 at 1069 (current version at 29 U.S.C. §§ 201–219)).

In 1946, the Supreme Court held that time spent by an employee walking to his or her station on the employer's premises was compensable under the FLSA. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 691 (1946). This resulted in an explosion of litigation, mostly filed by unions as the "agent or representative" of the affected employees. *Knepper*, 675 F.3d at 255–56. Congress was troubled by the excessive and "champertous" litigation (i.e., litigation brought by unions, not the parties in interest), and it enacted the Portal-to-Portal Act of 1947. *Id.* at 255. As a result, only plaintiffs who had a

personal interest in the litigation could bring suit on behalf of themselves and others, not unions or other "representatives." *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989).

In addition to limiting suits to only the parties in interest, the Portal-to-Portal Act also sought to eliminate the possibility of "one-way intervention." Under one-way intervention, because the named plaintiff brought suit on behalf of similarly situated workers, those similarly situated workers could wait to join the suit until after a favorable final judgment had been reached. *See Pentland v. Dravo Corp.*, 152 F.2d 851, 856 (3d Cir. 1945). In response, Congress added the "opt in" provision of the FLSA.[1] Under this provision, a similarly situated employee joins the suit by giving his or her "consent in writing" and filing "such consent in the court in which" the FLSA action is brought. 29 U.S.C. § 216(b). These consents are sent under Rule 5 and, notably, there is no requirement that the complaint be amended to add the opt-in plaintiff's name, nor does the opt-in plaintiff have to serve the complaint on the defendant. *See id.* This makes sense, as the opt-in plaintiff wishes to assert the same rights as the named plaintiff. And this streamlined process upholds the FLSA's goals of "enforcement and efficiency: enforcement of the FLSA, by preventing violations of the overtime-pay requirements and by enabling employees to pool resources when seeking redress for violations; and efficiency in the resolution of disputes, by resolving in a single

---

[1] The majority argues that this revision demonstrates Congress's intent to make opt-in plaintiffs "true parties the moment they join the case." It is not clear why forcing parties to join an action earlier would make them "true parties the moment they join the case." If anything, it demonstrates that once a plaintiff joins the collective, he or she irrevocably binds his or her interests with the interests of the collective.

action common issues arising from the same alleged illegal activity." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020).

In light of the FLSA's twin goals of enforcement and efficiency, and the principles of federalism and due process that underpin personal jurisdiction, it is unsurprising that for almost 80 years no court questioned whether opt-in plaintiffs needed to individually establish personal jurisdiction over the defendant. Requiring that opt-in plaintiffs make that showing hinders enforcement of the statute by making it harder for similarly-situated plaintiffs to bring suit and hinders efficiency by requiring defendants to defend multiple suits addressing the same claim. Similarly, suits brought in federal court do not implicate federalism because those suits do not infringe on state sovereignty, and they do not deprive defendants of due process. Indeed, if the named plaintiff establishes personal jurisdiction, then the defendant will face the FLSA suit in the federal court where the plaintiff brought suit, regardless of whether other employees opt in. To put it simply, allowing collective action members who cannot independently establish personal jurisdiction to opt in does not implicate any of the concerns personal jurisdiction is meant to protect. And requiring such a showing stymies the goals of the FLSA.

*BMS* did not change the interests that underlie personal jurisdiction, nor did it change the personal jurisdiction analysis for FLSA litigants.

As an initial matter, *BMS itself* disclaimed the possibility that it was effectuating the sea change proposed by my colleagues in this case. Indeed, the opinion was a "straightforward application … of settled principles of personal

jurisdiction." *BMS*, 582 U.S. at 269. And, moreover, it ex-
pressly excepted from its holding exercises of personal juris-
diction made by federal courts under the Fifth Amendment.
*Id.* As the amici in this case—including the eminent Professor
Arthur Miller, the "Miller" of the Wright & Miller treatise
cited extensively by the majority—artfully point out, absent
some specific direction otherwise, it is the Fifth Amendment
that governs federal court jurisdiction, not the Fourteenth
Amendment. R. 21, at 7–10, 13.

But even beyond *BMS*'s stated limits, the underpinning
logic of the decision is inapplicable to collective actions. *BMS*
involved a California mass action in which mostly out-of-state
plaintiffs sued a defendant that had few business ties to Cali-
fornia under California state law. *Id.* at 259. California claimed
that it had personal jurisdiction because of a "sliding scale"
approach. *Id.* at 260. This is the "loose and spurious" exercise
of jurisdiction that the Supreme Court disapproved of, not the
almost century-long practice of evaluating personal jurisdic-
tion against named collective action members.[2] *Id.* at 264. The
Supreme Court explained that allowing California to exercise
personal jurisdiction under the circumstances of the case
would violate the delicate balance of federalism among the
states. *Id.* at 263.

---

[2] This is not to say that a longstanding practice is insulated from re-
view, or that courts should "craft jurisdictional rules to prop up existing
practices." If, however, a practice is longstanding, supported by the text,
history, and purpose of the relevant statute, and not contrary to relevant
legal principles or the interests those principles are meant to protect, then
the claim that a Supreme Court decision mandates the abandonment of
that practice should be examined with the greatest possible caution.

As discussed above, federalism is not a concern among the various federal courts. Nor is forum shopping at the expense of another state's sovereignty which, the Supreme Court has since explained, was a concern animating the *BMS* decision. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 369–70 (2021).

But even under a due process lens, the potential harm to Bristol Myers-Squibb cannot be analogized to any harm that could befall Signet. Had the Supreme Court not intervened, Bristol Myers-Squibb would have faced suit in California *under California law. BMS*, 582 U.S. at 259. Indeed, the Supreme Court has already recognized a concern that such exercises of state law could punish defendants for conduct that is legal where it occurs. *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 421–22 (2003). Signet, by contrast, will be subject to the same law (the FLSA) no matter where it faces suit. It is telling that neither the majority nor Signet articulates what harm, injustice, or even inconvenience Signet faces.

There is another issue with the analogy, and that is the distinction between a California mass action and an FLSA collective action. The majority goes to great lengths to distinguish a class action from a collective action, arguing that because class and collective actions are distinct, opt-in plaintiffs must therefore demonstrate personal jurisdiction. But the first part of this hypothesis does not beget the second, and procedural mechanisms do not exist on a continuum with the California mass action statute on one end and Rule 23 class actions on the other. Nor have we held that class actions are the only procedural mechanism for which absent members are relieved of the duty to demonstrate individualized personal jurisdiction. But even accepting the premise as true that

collective and class actions are wholly distinct procedural mechanisms—which, for reasons discussed below, they are not—these differences should only matter to the personal jurisdiction analysis if they implicate the purposes of the FLSA or personal jurisdiction, or if they implicate the reasons the Supreme Court gave for reversing the California court in *BMS*. Indeed, the Supreme Court has instructed that the FLSA's remedial purposes should be enforced to the full extent of the statute's terms. *Hoffmann-La Roche Inc.*, 493 U.S. at 173.

An opt-in plaintiff is not differently situated toward the litigation in a way that implicates jurisdiction when compared to a Rule 23 plaintiff. Let us go difference-by-difference to explore why. The majority argues that there is no assurance of adequacy, predominance, or superiority in a collective action. This totally ignores this court's stated view that "there isn't a good reason to have different standards for the certification of the two different types of action." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). To the extent that the majority attempts to compare an opt-in plaintiff's filing of consent to a motion for class certification under Rule 23, this comparison ignores the fact that it is upon the defendant's motion for *decertification* that the court conducts its analysis into whether the opt-ins are similarly situated. *See Campbell v. City of Los Angeles,* 903 F.3d 1090, 1110 (9th Cir. 2018) (collecting cases and noting "The two-step approach has been endorsed by every circuit that has considered it."). The decertification motion comes after discovery, much like the typical motion for class certification under Rule 23. And even though named plaintiffs and class counsel in a class action must demonstrate their adequacy through Rule 23(a), both the named plaintiffs and counsel

must also demonstrate adequacy to earn opt-in plaintiffs in an FLSA collective action. *See Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) (if the opt-in plaintiff "is distrustful of the capacity of the 'class' counsel to win a judgment he won't consent to join the suit"); 29 U.S.C. § 216(b) (limiting collective actions to those "similarly situated" with the named plaintiff). The majority points out that absent collective action members can be present in court and hire their own attorneys, but so can class action members. Fed. R. Civ. P. 23(c)(2)(B)(iv). The majority points out that the statute of limitations begins tolling after the opt-in plaintiff files consent, but this does not demonstrate individualized control of the litigation *after the individual opts in*. Indeed, once the individual opts in, his or her claim becomes part of the broader collective, much like a class action. *See Smith v. Prof'l. Trans., Inc.*, 5 F.4th 700, 703 (7th Cir. 2021) (quoting *Harkins*, 385 F.3d at 1101). The majority correctly points out that the opt-in mechanism means opt-in collective action members are not anonymous, quoting *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1016 (7th Cir. 1988). Indeed, opt-in members sign consent forms with their names and file those consent forms in court. As *Anderson* rightly notes, the purpose of this provision is not to preserve individualized control of the litigation, but to ensure that employees—not unions—are driving the litigation. *See Anderson*, 852 F.2d at 1016 (citing *Arrington v. Nat'l. Broad. Co.*, 531 F. Supp. 498, 501 (D.D.C. 1982)). Indeed, "[t]he written consent forms assure the court that the signers 'want to have their rights adjudicated in [a collective] proceeding or be represented by counsel chosen by other plaintiffs.'" *Smith*, 5 F.4th at 703 (quoting *Harkins*, 385 F.3d at 1101) (alteration in original). To the extent that the majority opinion implies that filing consent makes an opt-in

plaintiff a named party to the suit, that is incorrect. The FLSA statute itself distinguishes between named plaintiffs and opt-ins. 29 U.S.C. § 256. One could argue that the very act of "opting in" reflects more participation in the litigation, thus requiring an individualized personal jurisdiction analysis. But no difference exists between a collective action member who opts in and a Rule 23 class action member who declines to opt out. Both will use the resources of a court to which he or she would not otherwise have access as a result of his or her choice to use a procedural mechanism to pursue relief under the same complaint as part of a group of similarly-situated individuals.

Much seems to revolve around the assertion that collective action members can seemingly assert their own claims such that no two opt-in plaintiffs would have the same case. The majority argues that collective action members are called "party plaintiffs" in the FLSA statute and are therefore similar to the plaintiffs in a California mass action. But in light of the statutory history, it makes sense that Congress would call opt-in members "party plaintiffs." It wished to distinguish them from unions, who would not otherwise be parties to the suit. Even absent this history, the Supreme Court instructs that "party" is not "an absolute characteristic." *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002). Its meaning can vary based on context. *Id.* But even so, calling FLSA opt-in members "party plaintiffs" does not make them synonymous with the California mass action members. In *BMS* the procedural mechanism permitted the re-dispersal of the individual suits after the common questions were resolved. *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 446 (7th Cir. 2020) (comparing the mass action statute to the federal multi-district litigation statute, 28 U.S.C. § 1407, which authorizes "coordinated or

consolidated pretrial proceedings"). While the disparate claims in a California mass action *may* be tried together, a singular trial is not required, or even presupposed. *McGhan Med. Corp. v. Superior Ct.*, 14 Cal. Rptr. 2d 264, 270 (Cal. Ct. App. 1992) ("That these [California mass action] cases may be coordinated does not mean they need be tried in one forum; it does not even indicate that ultimate trial of the cases need be unified."). By contrast, in FLSA collective actions the claims of all plaintiffs who have opted in are resolved together in a final judgment. *See Hoffmann-La Roche Inc.*, 493 U.S. at 172 (noting that the collective action mechanism creates a single action for multiple plaintiffs). And this procedural distinction aligns with the dissimilar structures of the suits. Under the California mass action procedure, plaintiffs file their own complaints, which are later consolidated. *See e.g.*, *BMS*, 582 U.S. at 259 (plaintiffs filed eight *separate complaints* in California Superior Court). Collective actions under the FLSA, just like class actions under Rule 23, begin as one suit under one common complaint alleging the same common claim, and continue under that same complaint until either final judgment or until the court determines that the plaintiffs are too heterogeneous to proceed together. *See Hoffmann-La Roche Inc.*, 493 U.S. at 172.

And, in any event, this ignores the level of individuality permitted in class actions. Class action plaintiffs can also bring individualized claims. Indeed, this court has approved of the use of subclasses when faced with a breach-of-warranty class action that had material differences in circumstances with respect to the product at issue. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 802 (7th Cir. 2013); *see also Alvarez v. City of Chicago*, 605 F.3d 445, 448–49 (7th Cir. 2010) (permitting

subclasses in an FLSA collective action).[3] And separately, class action members can be subject to individualized defenses. 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:55 (6th ed. 2024).

Despite the lack of difference between collective and class actions, the FLSA itself prohibits differences that would affect a defendant's due process rights or inhibit efficient resolution. If an opt-in plaintiff's FLSA claim is materially distinct from Luna Vanegas's claim, then that opt-in plaintiff is not similarly situated to Luna Vanegas. Indeed, that would be a situation in which the collective action members are "hopelessly heterogenous" from each other and decertification would be appropriate. *See Jonites v. Exelon Corp.*, 522 F.3d 721, 725–26 (7th Cir. 2008). In short, FLSA opt-in plaintiffs are no more individualized than their Rule 23 counterparts, and both sets

---

[3] The majority implies that the use of subclasses in FLSA collective actions somehow likens those actions to separately filed suits that are consolidated under the California mass action statute, citing *Alvarez*, 605 F.3d at 449. But the use of subclasses is procedurally distinct from the consolidation of separately filed suits. Indeed, subclasses are not separate actions, they are groups of homogenous individuals under the same complaint alleging the same violation of the FLSA. To the extent the majority's reference relies on *Alvarez*'s use of the terminology of "subclaim," that reliance is misplaced. Indeed, *Alvarez* involved ten subclaims, but many more individuals, further illustrating that "claims" are representative in the FLSA context. *See id.* at 446; *Caraballo v. City of Chicago*, 2009 WL 743315, at *2 (N.D. Ill. Mar. 18, 2009) (district court opinion reversed by *Alvarez*, 605 F.3d at 451). Finally, I will note that the primary question in *Alvarez*, an FLSA case, was whether the use of subclasses meant that individual questions would predominate over common questions. *Id.* This question, of course, is taken directly from the class action context, further supporting the inference that class and collective actions operate similarly. Fed. R. Civ. P. 23(b)(3).

of plaintiffs lack the markers of individuality that warranted judicial intervention in *BMS*.

The majority opinion does not contend with this core shortcoming. Even though some differences do exist between collective and class actions—although those differences are more limited than the majority opinion claims—none of those differences trigger an obligation for opt-in plaintiffs to demonstrate personal jurisdiction because they do not implicate the interests that personal jurisdiction is designed to protect. *BMS* may have spurred a newfound interest in the personal jurisdiction of unnamed parties seven years ago, but it cannot control our outcome here. The procedural mechanisms—one which gathers separately filed suits for some purposes, and one which consolidates plaintiffs into one suit until final judgment—are too distinct for neat application, and the federalism concerns are irrelevant in federal court. And in the absence of controlling Supreme Court precedent, we look to the statute. We examine its text—which requires only consent, not a summons or complaint. We review its history—which supports nationwide collective actions. And we recall its purpose—to protect workers from the illegal actions of their employers and level the playing field so that they may meaningfully assert their rights.

There also seems to be an underlying concern that if out-of-state collective action members are permitted to opt in to collective actions, they may pursue claims (e.g., state law claims) against the employer that they would not be able to otherwise. But just as the FLSA does not require a showing of personal jurisdiction, it also does not waive jurisdictional requirements as to other claims. When other claims are brought in conjunction with FLSA claims, they are analyzed

separately and certified under Rule 23, not the FLSA. *See e.g.,*
*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 448–49 (2016).

Separately, the majority applies a new rule to FLSA opt-in
plaintiffs today when it requires opt-ins to serve summons "if
their claims do not arise out of or relate to the defendant's
minimum contacts with the forum state." The majority claims
that it is simply applying settled law to a new circumstance
and draws a comparison between an opt-in plaintiff and a
plaintiff who wishes to add a new, substantively unrelated
claim to an existing suit, citing Wright & Miller. But as dis-
cussed above, the FLSA statute forecloses the possibility that
the claim of an opt-in plaintiff is materially distinct from the
named plaintiff's claim because the opt-in plaintiff must be
"similarly situated" to the named plaintiff. 29 U.S.C. § 216(b).
In any event, it is not clear how this new application will in-
teract with Rule 4(m)—which requires service of summons
within 90 days of filing the complaint. Moreover, the FLSA
requires that an opt-in plaintiff do nothing more than file his
or her consent to join the collective. 29 U.S.C. § 216(b) (an in-
dividual opts in when "he gives his consent in writing to be-
come such a party and such consent is filed in the court in
which such action is brought"). It is vital to understand that
the majority's rule directly conflicts with both the text of the
statute and its underlying principles. With respect, I would
suggest that if we must disregard the text, history, and pur-
pose of a statute to arrive at a particular outcome, then per-
haps the outcome is incorrect.

Today's decision betrays the very purposes of the FLSA,
both for plaintiffs and defendants. FLSA plaintiffs will now
be required to bring suit in only limited jurisdictions, and may
struggle to bring suit at all. If plaintiffs are able to proceed in

separate forums, Signet may be subject to identical suits, challenging the same practice, alleging the same injury, in multiple courts. This is, of course, the very type of increased litigation that the FLSA sought to minimize by allowing collective actions. *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003), as amended (Nov. 14, 2003). And notably, unlike *BMS*, the same governing law—the FLSA—will be applied to each claim. And separately, Signet may become subject to different, and perhaps incompatible, judicial holdings resulting from these suits in many forums. That Signet has asked and, today, received, our permission to create inefficiency not just for itself, but for other smaller, less successful corporations and district court judges who will now be faced with perhaps hundreds—or possibly even thousands—of mini trials just on the question of personal jurisdiction,[4] should only make us ask why Signet desires such an outcome, particularly in the absence of an articulated injury. The answer, of course, is in the first paragraph of this dissent. The level playing field, which Congress carefully constructed, is now gone.

---

[4] The majority claims that under this dissent's "rule," thousands of mini trials will occur. I submit that is not accurate. Indeed, as noted above, it is the majority's rule that will cause such mini trials to occur. To the extent this dissent puts forth a "rule" it is only that personal jurisdiction should be evaluated against the named plaintiff of an FLSA collective action. By contrast, the majority's rule will result in opt-in specific challenges to personal jurisdiction. The district court will then have to evaluate each challenge, opt-in by opt-in. Those evaluations might be difficult, and they might require evidence or testimony to adjudicate. It is this individualized personal jurisdiction inquiry that results in thousands of mini trials.

36                                        No. 23-2964

In our holding today, we betray the purposes of the FLSA for an outcome not mandated, or even encouraged, by the Supreme Court or personal jurisdiction law.

For these reasons, I respectfully dissent.