IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSE AGEO LUNA VANEGAS,
on behalf of himself and all others similarly situated,
and GUADALUPE NALLELY GARCIA-GARCIA, in her
capacity as the executor of Jose Luis Garcia Gonzalez's
estate,

Plaintiffs,

v.                                                          OPINION and ORDER

SIGNET BUILDERS, INC.,                                      21-cv-54-jdp
SIGNET CONSTRUCTION, LLC,
SIGNET CONSTRUCTION, INC.,
NORTHRIDGE CONSTRUCTION, INC.,
ORVILLE J. SCHONEFELD II, NATALIE FARMER,
and RODNEY SCHONEFELD,

Defendants.

---

Plaintiffs Jose Ageo Luna Vanegas and Jose Garcia Gonzalez (represented here by the executor of his estate, Guadalupe Nallely Garcia-Garcia) worked for a construction company, defendant Signet Builders Inc. Plaintiffs were foreign workers with visas for temporary agricultural work. Plaintiffs helped construct buildings for hogs, dairy cows, and egg-laying hens on farms in Wisconsin, Minnesota, and Indiana. Although plaintiffs worked more than 40 hours per week, Signet Builders did not pay them one and one-half times their regular rate for their overtime. Plaintiffs brought this collective action under the Fair Labor Standards Act (FLSA), seeking to recover their unpaid overtime. Plaintiffs also bring related state-law claims.

Several motions are before the court, but the main ones are the parties' cross-motions for summary judgment, Dkt. 217 and Dkt. 221. The court will grant summary judgment to defendants because plaintiffs' construction work falls under the FLSA's exemption for agricultural work, 29 U.S.C. § 213(b)(12).

BACKGROUND

This case has a long procedural history. Here are the highlights.

At the start of this case, Luna Vanegas was the only plaintiff, and Signet Builders was the only defendant. Dkt. 1. Signet Builders moved to dismiss Luna Vanegas's complaint, Dkt. 25, and the court granted the motion, holding that Luna Vanegas pleaded himself out of court because the allegations in his complaint showed that his work fell under the FLSA's exemption for agricultural work, *Luna Vanegas v. Signet Builders, Inc.*, No. 21-cv-54-jdp, 554 F. Supp. 3d 987 (W.D. Wis. 2021). The court of appeals reversed, holding that the allegations in the complaint did not unambiguously show that the exemption applied. *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636 (7th Cir. 2022).

On remand, Luna Vanegas amended his complaint to add Garcia Gonzalez as a plaintiff, add a handful of defendants, and assert related state-law claims. Dkt. 108. Luna Vanegas also renewed his motion for approval of notice to his proposed FLSA collective. Dkt. 83. The court granted the motions, conditionally certifying an FLSA collective of all temporary agricultural worker visa holders who worked on projects for defendants on or after January 2019, regardless of whether they performed work in Wisconsin, Minnesota, or Indiana. *Luna Vanegas v. Signet Builders, Inc.*, No. 21-cv-54-jdp, 2023 WL 4926237 (W.D. Wis. Aug. 2, 2023). But this court certified an interlocutory appeal of the issue of whether plaintiffs could proceed in this court on the basis of work performed outside Wisconsin. *Vanegas v. Signet Builders, Inc.*, No. 21-cv-54-jdp, 2023 WL 5663259 (W.D. Wis. Sep. 1, 2023). The court of appeals reversed the conditional certification, holding that this court's personal jurisdiction reached only those claims that Wisconsin's specific jurisdiction embraces. *Vanegas v. Signet Builders, Inc.*, 113 F.4th

2

718 (7th Cir. 2024). The court of appeals' decision effectively limited this case to claims arising out of work performed in Wisconsin.

This case is now ready for a decision on the merits. What follows are the pertinent facts.

Plaintiffs worked for Signet Builders in Wisconsin on projects for non-party Daybreak Foods, a farm devoted to commercial egg production. Daybreak Foods hired non-party Ag Building Solutions, LLC to construct a pre-engineered metal shell for a 33,000-square-foot building, which would serve to collect eggs from Daybreak's egg-laying hens. Daybreak also hired non-party Henning Cos., LLC, to build pullet houses (for young hens) and layer houses (for mature, egg-laying hens). Signet Builders was the sub-sub-contractor for Ag Building Solutions and the sub-contractor for Henning. Signet Builders provided the labor, materials, equipment, and services needed to build and erect the pre-engineered metal shell, the pullet houses, and the layer houses.

## ANALYSIS

The main issue presented by the parties' cross-motions for summary judgment is whether plaintiffs' construction work is exempt from the FLSA's overtime rules. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court construes all facts and draws all reasonable inferences in the non-moving party's favor. *Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 818 (7th Cir. 2016). The court applies the same summary judgment standards when faced with cross-motions. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017).

### A.  FLSA's agricultural work exemption

The FLSA generally requires employers to pay their employees an overtime rate of one and one-half times the employees' regular hourly rate. 29 U.S.C. § 207(a)(1). But there are exceptions. Under the exception at issue in this case, the FLSA's overtime rules do not apply to "any employee employed in agriculture." 29 U.S.C. § 213(b)(12). The FLSA's agricultural work exemption turns on the meaning of "agriculture," which is a defined term in the FLSA.

The FLSA's definition of the term "agriculture" is somewhat complex; it describes the term "in both a primary and a secondary sense." *Bayside Enters., Inc. v. N.L.R.B.*, 429 U.S. 298, 300 (1977). Under the FLSA, "agriculture" includes:

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f). The primary meaning of "agriculture" in the FLSA's definition is "farming in all its branches," including the practices specified in the statute, such as the raising of poultry. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762 (1949). The secondary meaning of "agriculture" is broader—it includes "any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidently to or in conjunction with 'such' farming operations." *Id.* at 763.

4

### 1. The meaning of "an incident to or in conjunction with"

The parties dispute whether plaintiffs' construction work falls within the secondary meaning of "agriculture," which presents an issue of statutory interpretation. The goal of statutory interpretation is to ascertain the plain meaning of the statute. *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016). Courts begin with the statutory text. *Consumer Fin. Prot. Bureau v. Townstone Fin., Inc.*, 107 F.4th 768, 776 (7th Cir. 2024).

The pertinent statutory text is: "any practices . . . performed by a farmer or on a farm as an incident to or in conjunction with [the raising of poultry]." 29 U.S.C. § 203(f). It is undisputed that plaintiffs' construction work happened "on a farm." It is also undisputed that the pre-engineered metal shell, the pullet houses, and the layer houses were intended to house egg-laying hens, a type of poultry. So the statutory interpretation inquiry comes down to whether plaintiffs' work was "an incident to or in conjunction with" raising poultry.

Courts give statutory language its "ordinary, contemporary, common meaning," *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (citation omitted), considering the language in the context of the statutory scheme as a whole, *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) (citation omitted). Courts also consult precedential decisions to inform their analysis. *Christopher v. United States*, 148 F.4th 885, 894 (7th Cir. 2025) (citation omitted). When the language in a statute is unambiguous, the interpretive inquiry ends, and courts enforce the statute according to its plain meaning. *River Rd. Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 649 (7th Cir. 2011).

The statutory phrase "an incident to or in conjunction with" is unambiguous. The common meaning of the phrase in this context would be a practice likely to happen because of or resulting from raising poultry (*i.e.*, a practice "incident to" a farming operation),

or a practice associated with or occurring together with raising poultry (*i.e.*, a practice "in conjunction with" a farming operation). *See* Webster's Third New Int'l Dictionary 480, 1142 (1981); The New Oxford Am. Dictionary 360, 853 (2d ed. 2005).

In this case, plaintiffs built and erected metal shells, pullet houses, and layer houses for Daybreak's egg-laying hens. Plaintiffs did this construction work because Daybreak raised poultry and needed structures in which to house the hens. Plaintiffs' construction work plainly is "an incident to or in conjunction with" raising poultry.

The court's conclusion finds support in the Supreme Court's decision in *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755 (1949). In *Farmers Reservoir*, the Court considered whether employees of a company that distributed water to farmers for irrigation purposes fell within the FLSA's agricultural work exemption. 337 U.S. at 757. The Court held that the field employees of the company (ditch riders, lake tenders and maintenance men who operated the company's reservoirs and canals) did not fall within the agricultural work exemption. *Id.* at 769. The Court reasoned that the field employees' work was not farming because they did not water the soil to grow plants as part of the process of cultivating and tilling the soil (the farmers did that work). *Id.* at 763. But the Court stated that it was "clear that [the work] does constitute a practice performed as an incident to or in conjunction with farming" under the secondary meaning of "agriculture." *Id.* at 766. The field employees' work nevertheless did *not* fall within the secondary meaning of agriculture because it was not done by a farmer or on a farm. *See id.* at 767–68.

Plaintiffs' work, like the field employees' work in *Farmers Reservoir,* was performed as an incident to or in conjunction with farming. The field employees in *Farmers Reservoir* brought water to farmers so the farmers could cultivate and till their soil. Plaintiffs built and erected

6

structures to house egg-laying hens so Daybreak could raise poultry. If the work in *Farmers Reservoir* was clearly incident to or in conjunction with farming, so is the work here. But critically, unlike the field employees in *Farmers Reservoir*, plaintiffs performed their work on a farm, so plaintiffs satisfy that part of the secondary meaning of "agriculture," too. Consequently, the court concludes that plaintiffs are "employee[s] employed in agriculture" under the FLSA, which means that the FLSA's overtime rules do not apply to the construction work that they performed in Wisconsin. 29 U.S.C. § 213(b)(12).

### 2. Plaintiffs' counterarguments

Plaintiffs resist this conclusion. They contend that three cases compel a different result. As will be explained, the court disagrees.

### a. *Farmers Reservoir* does not compel a different result

Plaintiffs contend that the court must consider whether their work was separately organized as an independent productive activity before determining whether their work was "an incident to or in conjunction with" raising poultry. Dkt. 218, at 10.[1] To support their contention, plaintiffs cite the Supreme Court's decision in *Farmers Reservoir*. Plaintiffs are correct that *Farmers Reservoir* contains the following sentence: "The question is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity." 337 U.S. at 761. But that sentence appears in the Court's discussion on the occupation of agriculture in general, not its discussion of the secondary meaning of "agriculture" under the FLSA. In any event, the Court goes on to say:

> In the *absence* of a detailed definition of agriculture we should be
> compelled to determine whether the activity concerned in the

---

[1] Citations to filings from the docket use the page numbers assigned by the court's electronic filing system, not the page numbers in the original document.

> present case—the diversion, storage and distribution of water for irrigation purposes—is carried on as part of the agricultural function or is so separately organized and conducted as to be treated as an independent, nonagricultural productive function. *Fortunately, however, the Fair Labor Standards Act provides a carefully considered definition which is of substantial aid in helping us to make that determination.*

*Id.* at 762 (emphasis added). In other words, the Court did not need to determine whether the activity was part of the agricultural function or was separately organized as an independent productive activity because the FLSA defines the term "agriculture." The textual definition of "agriculture" applies to plaintiffs' work for the reasons explained above.

### b.  *Holly Farms* does not compel a different result

Plaintiffs contend that the statutory phrase "an incident to or in conjunction with" is ambiguous. Dkt. 250, at 3. To support their contention, plaintiffs cite the Supreme Court's decision in *Holly Farms Corp. v. National Labor Relations Board*, 517 U.S. 392 (1996), which they argue rejects the proposition that the statutory phrase "an incident to or in conjunction with" is plain and unambiguous, Dkt. 250, at 3.

In *Holly Farms Corp.*, the National Labor Relations Board concluded that Holly Farms' live-haul crews of chicken catchers, forklift operators, and truckdrivers were "employee[s]," not "agricultural laborer[s]," which meant that the live-haul crews were covered under the National Labor Relations Act (NLRA). 517 U.S. at 394–95. (The meaning of the term "agricultural laborer" in the NLRA is derived from the FLSA's definition of "agriculture." *Id.* at 397.) Holly Farms argued that the Board erred because, "under the plain language of [29 U.S.C. § 203(f)], the catching and loading of broilers qualifies as work performed 'on a farm as an incident to' the raising of poultry." *Id.* at 401. The Court rejected Holly Farms' argument, explaining that it "[found] Holly Farms' position to be a plausible, but not an inevitable,

8

construction of [§ 203(f)]." *Id.* The Court ultimately deferred to the Board's decision because it "reflect[ed] a reasonable interpretation of the law." *Id.* at 409.

*Holly Farms* does not bear the weight that plaintiffs put on it. The Court emphasized that, for the Board to prevail, it did not have to "show that its construction [was] the *best* way to read the statute," only that it its interpretation was *reasonable*. *Id.* The Court also emphasized that it reached its holding "[r]egardless of how [the Court] might have resolved the question as an initial matter." *Id.* (citation omitted). The Court took this approach to the Board's interpretation of the statute because Congress had conferred discretionary authority on the Board to administer the NLRA and define the term "employee." *N.L.R.B. v. Town & Cnty. Elec., Inc.*, 516 U.S. 85, 94 (1995). As a result, the Board's "construction of that term [was] entitled to considerable deference," and the Court would "uphold any interpretation that [was] reasonably defensible." *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 891 (1984).

Congress conferred discretionary authority on the Department of Labor to interpret *some* FLSA provisions. Consider the following exemptions in 29 U.S.C. § 213:

> § 213(a)(1): exempting from the FLSA's minimum wage and overtime provisions "any employee employed . . . in the capacity of outside salesman *(as such terms are defined and delimited from time to time by regulations of the Secretary . . .)*;
>
> § 213(a)(15): exempting from the FLSA's minimum wage and overtime provisions "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves *(as such terms are defined and delimited by regulations of the Secretary)*"; and
>
> § 213(b)(14): exempting from the FLSA's overtime provisions "any employee employed within the area of production *(as defined by the Secretary)* by an establishment commonly recognized as a country elevator."

29 U.S.C. § 213 (emphasis added).

9

But Congress did *not* confer discretionary authority on the Department of Labor to interpret the exemption at issue in this case. Stated another way, the FLSA's agricultural work exemption does not contain language allowing the Secretary of Labor to define its terms. In fact, Congress took the opposite approach by providing its own definition for the term "agriculture" to be used in the FLSA. 29 U.S.C. § 203(f).

Because the Department of Labor does not have discretionary authority to interpret the meaning of "an incident to or in conjunction with," the court need not defer to the Department's construction. Instead, the court must "exercise independent judgment in determining the meaning of [the] statutory provision[]" and give the provision its "best reading," using the traditional tools of statutory construction. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). That's the approach the court took here, reaching the conclusion that the statutory definition is unambiguous.

### c. *Luna Vanegas* does not compel a different result

Plaintiffs contend that the court of appeals decision in *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636 (7th Cir. 2022), the first appeal in this case, also rejects the proposition that the statutory phrase "an incident to or in conjunction with" is plain and unambiguous. *See* Dkt. 250, at 3–4. Plaintiffs argue that the law of the case doctrine requires this court to follow the court of appeals' statutory interpretation analysis in *Luna Vanegas*. The law of the case doctrine means that "once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Key v. Sullivan*, 925 F.2d 1056, 1061 (1991); *see Ins. Grp. Comm. v. Denver & R.G.W.R. Co.*, 329 U.S. 607, 612 (1947).

The sole issue before the court of appeals in *Luna Vanegas* was whether Luna Vanegas's complaint "plead[ed] facts that unequivocally show that his construction work was 'an incident to or in conjunction with' the farming operations of the livestock farmers on whose property he built the enclosures." *Luna Vanegas*, 46 F.4th at 641. The court held that Signet Builders did not meet its burden to prove that the complaint unambiguously showed that Luna Vanegas fell within the FLSA's agricultural work exemption. *Id.* at 645.

The court of appeals did not conduct a statutory interpretation analysis in *Luna Vanegas*. The court did not give the statutory phrase "an incident to or in conjunction with" its ordinary meaning, consider the phrase's language in the context of the statutory scheme as a whole, or determine whether the phrase was ambiguous. Instead, the court turned directly to the Department of Labor's regulations interpreting the statutory phrase. The court reasoned that the Department of Labor's regulations establish a "nuanced, fact-intensive inquiry" that is "ill-suited for resolution based only on the allegations of a complaint." *Id.* at 642. The court did not conduct an analysis under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), apparently concluding that the regulations were controlling.

The court relied on a Department of Labor interpretive rule, which provides that work constitutes secondary agriculture if it meets three conditions: the work (1) must constitute an established part of agriculture; (2) must be subordinate to the farming operations involved; and (3) must not amount to an independent business. 29 C.F.R. § 780.144. None of the conditions in the Department of Labor's interpretive regulation appear in 29 U.S.C. § 203(f). Indeed, they appear to contradict § 203(f)'s language, which requires only that a practice be "performed by a farmer or on a farm as an incident to or in conjunction with such farming operations." 29 U.S.C. § 203(f). The statute does not require a practice to be agricultural in nature, much

less an established part of agriculture, to fall within the secondary meaning of "agriculture." And as previously discussed, the third condition, which considers whether the work amounts to an independent business, is not the proper analysis, despite the statements in *Farmers Reservoir* suggesting otherwise.

The court of appeals nevertheless applied the third condition to the allegations in Luna Vanegas's complaint. The court stated that the Department's regulations "establish a fact-intensive, totality-of-the-circumstances test to determine whether work performed on a farm is agricultural or if it is an independent business." *Luna Vanegas*, 46 F.4th at 645 (citing 29 C.F.R. § 780.145). The court also stated that the regulations "list many factors that bear on that analysis." *Id.* at 642, 645 (citing 29 C.F.R. §§ 780.141–147). The court reasoned that Luna Vanegas's complaint "[said] little about most of the regulatory factors," which made this case "not a candidate for disposition under Rule 12(b)(6)." *Id.* at 645. Because the allegations in Luna Vanegas's complaint *could* have fallen outside of the secondary meaning of "agriculture" as interpreted by the Department of Labor, the court of appeals held that Signet Builders did not prove that the complaint unambiguously showed the application of the FLSA's agricultural work exemption. *See id.*

Even if the court of appeals implicitly interpreted the phrase "an incident to or in conjunction with" in *Luna Vanegas*, the court concludes that the law of the case doctrine does not require the court to adopt the court of appeals' analysis. The law of the case doctrine is not a "hard and fast" rule—it gives way when "a good reason is shown to depart from it." *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 854 (7th Cir. 2004). These reasons include:

> (1) Substantial new evidence introduced after the first review;
>
> (2) A decision of the Supreme Court after the first review that is inconsistent with the decision on that review; and

> (3) A conviction on the part of the second reviewing court that the decision of the first was clearly erroneous.

*Chicago & N.W. Transp. Co. v. United States*, 574 F.2d 926, 930 (7th Cir. 1978). The second reason is at issue here. An intervening change in the law underlying a prior decision is "an example of a generally accepted occasion for disturbing settled decisions in a case." *Kathrein v. City of Evanston*, 752 F.3d 680, 685 (7th Cir. 2014). An intervening change in the law need not overrule the court of appeals' decision; it is enough for the intervening change to "clearly alter the law underlying the decision." *Id.* at 686. Consequently, a district court may reexamine an issue resolved in an earlier appeal if it reasonably concludes that there has been an intervening change in the law. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005). Stated another way, when there has been a relevant change in the law, the court of appeals' decision "do[es] not bind the district court." *Id.*

The Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), is an intervening change in the law that clearly alters the reasoning underlying the court of appeals' decision in *Luna Vanegas*. In *Loper Bright*, the Court held that courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous." 603 U.S. at 413. Instead, courts must "exercise independent judgment in determining the meaning of statutory provisions." *Id.* at 394. Courts do this by using the traditional tools of statutory interpretation to resolve any ambiguities in a statute and construct a single, best meaning. *See id.* at 400–01. *Loper Bright* instructs courts to adopt an agency's interpretation of a statute only when Congress explicitly delegates to an agency the authority to interpret the statute. As previously discussed, that's not the case here; the FLSA's agricultural work exemption does not give the Department of Labor the authority to define the term "agriculture" as it is used in the statute.

*Loper Bright* requires the court to interpret the phrase "an incident to or in conjunction with" using the traditional tools of statutory interpretation. Because the court of appeals did not undertake this analysis, the court has done so here. The court reluctantly takes a different path than the court of appeals, only because it is compelled to do so by the principles set out in *Loper Bright*.

### 3. Conclusion

Plaintiffs worked on farms. They built and erected a building for collecting eggs, pullet houses for young hens, and layer houses for egg-laying hens. Their construction work was incident to or in conjunction with the raising of poultry, which means that it constituted "agriculture" under the FLSA. As a result, the FLSA's exemption for "employee[s] employed in agriculture" applies, and the FLSA's overtime rules do not apply to plaintiffs' work. The court will grant summary judgment to defendants on this issue.

Plaintiffs concede that their claim under the FLSA on the agricultural work exemption issue is the "predicate issue with respect to their contract/*quantum meruit* claim," Dkt. 218, at 8, that is, their breach of contract and unjust enrichment claims, Dkt. 108, at 15–18 (amended complaint). Because plaintiffs' work is exempt from the FLSA's overtime rules, the court need not separately address their state-law claims.

The court will deny plaintiffs' motion for summary judgment. This case will be closed.

### B. Remaining motions

Both sides have filed other motions, which the court will address here.

Defendants move for confirmation of jury trial, Dkt. 208, and plaintiffs move to compel production of documents and deem certain admissions admitted. Dkt. 276. The court's summary judgment decision will moot these motions.

14

The parties jointly move to dismiss without prejudice opt-in plaintiff Fernando Arzola Cordero, Dkt. 247, and the court will grant the motion.

Defendants move to strike opt-in plaintiff Luis Alejandro Lopez Rodriguez's notice of filing consent to sue. Dkt. 258. Defendants' motion to strike is more properly understood as a motion to dismiss because, as an opt-in plaintiff, Lopez Rodriguez "enjoys full party status." *Richards v. Eli Lilly & Co.*, 149 F.4th 901, 906 (7th Cir. 2025). (Plaintiffs also move for leave to file a sur-reply brief in opposition to motion to strike, Dkt. 274, and the court will grant their motion.) The amended notice in this case required individuals opting in as plaintiffs in this case to sign *and* return the consent to join forms to plaintiffs' counsel by the end of the notice period. *See* Dkt. 113, Ex. 1, at 3. Plaintiffs' counsel sent out the amended notice on November 26, 2025. Dkt. 205. Individuals had 90 days to opt in as plaintiffs, Dkt. 107, at 23, so the notice period ended on February 24, 2026. Plaintiffs' counsel filed Luis Alejandro Lopez Rodriguez's consent to sue form on March 17, 2026, Dkt. 213, which is the same day that he texted the form to a paralegal with plaintiffs' counsel, Dkt. 271. Lopez Rodrigeuz apparently signed the consent to sue form on December 11, 2025, Dkt. 213, Ex. 1, at 2, and sent the form to plaintiffs' counsel, but plaintiffs' counsel did not receive it. Dkt. 270, ¶ 4. The court concludes that Lopez Rodriguez's consent to sue form was untimely. As a result, the court will grant defendants' motion and will dismiss Lopez Rodriguez without prejudice.

ORDER

IT IS ORDERED that:

1. Defendants Signet Builders, Inc., Signet Construction, LLC, Signet Construction, Inc., Northridge Construction, Inc., Orville J. Schonefeld II, Natalie Farmer, and Rodney Schonefeld's motion for summary judgment, Dkt. 221, is GRANTED.

15

2.  Plaintiffs Jose Ageo Luna Vanegas and Guadalupe Nallely Garcia-Garcia's motion for partial summary judgment, Dkt. 217, is DENIED.

3.  Defendants' motion for confirmation of jury trial, Dkt. 208, is DENIED as moot.

4.  Plaintiffs' motion to compel production of documents and to deem certain admissions admitted, Dkt. 276, is DENIED as moot.

5.  The parties' joint motion to dismiss without prejudice opt-in Fernando Arzola Cordero, Dkt. 247, is GRANTED.

6.  Plaintiffs' motion for leave to file sur-reply in opposition to motion to strike, Dkt. 274, is GRANTED.

7.  Defendants' motion to strike Luis Alejandro Lopez Rodriguez's notice of filing consent to sue, Dkt. 258, is GRANTED, and he will be dismissed without prejudice.

Entered June 26, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

16